## A93A1661. SPIVEY et al. v. CITY OF BAXLEY et al.
(437 SE2d 623)

ANDREWS, Judge.

Reverend and Mrs. Spivey appeal the trial court's grant of summary judgment in this action arising out of injuries Mrs. Spivey claims to have sustained while attending an evening softball game at a field maintained by the Baxley-Appling County Recreation Board.

The complaint alleged that on May 24, 1990, the Spiveys were attending a church softball game at a recreational park which was owned, operated and maintained by defendants, the City of Baxley and the Baxley-Appling County Recreation Board. As the pastor's spouse, Mrs. Spivey worked in many capacities associated with the church and was attending the softball game for the church on the evening of her injury. Mrs. Spivey stepped from a concrete slab, which covered a drainage area, stepped into a hole next to the slab, and fell and hurt herself. The Spiveys claimed that the injuries were caused by defendants' maintenance of, and failure to correct, a dangerous condition on the property. The trial court's order concluded that in order to allow water to enter the drain, there was a gap between one side of the slab and the ground.

Defendants moved for summary judgment, alleging that the Spiveys' claims were barred by the Recreational Property Act, OCGA § 51-3-20 et seq., despite the existence of factual disputes regarding the length of the grass and the available lighting. They claimed that, as a matter of law, there was no basis for liability for Mrs. Spivey's accident, which occurred as she stepped into the mouth of a storm drain.

Attached to the motion for summary judgment were two affidavits of Jeff Baxley, the director of the Baxley-Appling County Recreation Department, who swore that for many years preceding Mrs. Spivey's accident, the storm drains at the ballfields were covered with metal grates, which grates had caused several accidents. He avowed that because of prior problems, the metal grates were replaced with the concrete covers in use at the time of Mrs. Spivey's fall. He stated that he went to the area of Mrs. Spivey's fall immediately after it and observed that there was no high grass, the area was well-lighted and that the step-off of the drain was in plain view.

Baxley stated that the softball game which Mrs. Spivey attended was open to the public at no charge. Baxley stated that both individual youths and the teams participating in the softball program were charged a fee which helped defray the cost of the equipment, official, facilities, lighting, and various officials involved in the game.

In response, the Spiveys submitted Reverend Spivey's affidavit in which he stated that the hole in which his wife stepped was eight-and-one-half inches deep, was not open and obvious, and was not in

plain view. He also stated that the grass obscured the hole and that the lighting was inadequate. Attached to his affidavit were photographs of the area.

In granting the motion for summary judgment, the trial court's helpful order set forth many of the facts outlined above. Viewing the evidence in the light most favorable to the Spiveys, the court found that the gap was about eight inches and was obscured by grass. Nonetheless, the court concluded that summary judgment on the claim was proper.

OCGA § 51-3-20 provides that the purpose of the Recreational Property Act (RPA) is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting the owners' liability toward persons entering thereon for recreational purposes." To that end, OCGA § 51-3-23 insulates owners and operators of recreational property made available for public use at no charge from liability for damages resulting from ordinary negligence. In their sole enumeration of error, the Spiveys claim that the trial court erred in granting summary judgment since the incident here fell outside the protection of the statute and they raise three specific arguments in this regard.

First, the Spiveys claim that appellees are liable under OCGA § 51-3-25 (1), which does not limit liability for any "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." The Spiveys argue that the public authorities knew of the dangerous condition of the hole and yet chose not to warn of it. In addition to the hole itself, the Spiveys argue that the responsible authorities knew that the lighting was poor and that grass had grown up under the slab. Thus, they contend, the wilful and malicious exception applies.

We disagree. "A willful failure to guard or warn would require actual knowledge of the owner that its property is being used for recreational purposes; that a condition exists involving an unreasonable risk of death or serious bodily harm; that the condition is not apparent to those using the property; and that having this knowledge, the owner chooses not to guard or warn, in disregard of the possible consequences. This test excludes either constructive knowledge or a duty to inspect." (Citation and punctuation omitted.) *Quick v. Stone Mountain Memorial Assn.*, 204 Ga. App. 598, 599 (420 SE2d 36) (1992); compare *North v. Toco Hills*, 160 Ga. App. 116 (286 SE2d 346) (1981).

The evidence in this case showed that appellees knew that there was a concrete drainage cover on the property. There was evidence that the concrete drainage cover had replaced metal grates which had previously caused injuries. There was no evidence of any prior accidents which had been caused by the concrete covers, nor was there

any evidence that the responsible authorities were aware of any danger associated with the concrete covers. "[W]e find no evidence to show that a condition involving an unreasonable risk of death or serious bodily harm existed . . . and no evidence demonstrating that appellee chose not to guard or warn in disregard of possible consequences. A wilful failure imports a conscious, knowing, voluntary, intentional failure, a purpose or willingness to make the omission, rather than a mere inadvertent, accidental, involuntary, inattentive, inert, or passive omission." (Citations and punctuation omitted.) *Quick,* supra at 600; see generally *McGruder v. Ga. Power Co.,* 126 Ga. App. 562 (1) (191 SE2d 305) (1972), rev'd on other grounds 229 Ga. 811 (194 SE2d 440) (1972); *Ga. Marble Co. v. Warren,* 183 Ga. App. 866 (360 SE2d 286) (1987); *Edmondson v. Brooks County Bd. of Ed.,* 205 Ga. App. 662 (423 SE2d 413) (1992).

Secondly, the Spiveys contend that the fee charged for the softball team was a "charge" for the use of the premises and that therefore the RPA does not apply. The Spiveys argue that the fee which was required for participation in the church softball league constituted a "charge" and that whether the spectators were directly charged is irrelevant.

OCGA § 51-3-21 (1) defines "charge" for purposes of the Act: "[c]harge means the admission price or fee asked in return for invitation or permission to enter or go upon the land." The "charge" referred to in the Act is what is imposed to obtain permission to enter the premises. The evidence showed that the fee for the softball league had no relation to permission to use the spectator seating area, which was open to the general public at no charge. Mrs. Spivey was not charged a fee to enter the premises on the evening in question. Furthermore, we do not accept the Spiveys' argument that their contribution to the fees paid for the softball league, through their church contributions, constitutes a charge as contemplated by this section. See *Majeske v. Jekyll Island State Park Auth.,* 209 Ga. App. 118 (433 SE2d 304) (1993); *Hogue v. Stone Mountain Mem. Assn.,* 183 Ga. App. 378 (358 SE2d 852) (1987); see generally *Cedeno v. Lockwood,* 250 Ga. 799 (301 SE2d 265) (1983).

Finally, the Spiveys claim that Mrs. Spivey's presence on the property was not for "recreational purposes" so as to fall within the Act. The Spiveys claim that the Act applies to individuals who are actually involved in the recreational activity for which the premises are utilized, not for people who are passive spectators.

OCGA § 51-3-21 (4) does not specifically address spectators at athletic events. Nonetheless, subsection (4) states " 'recreational purpose' includes, but is not limited to, any of the following or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter

sports, and viewing or enjoying historical, archeological, scenic, or scientific sites."

We conclude that finding such spectators to be within the scope of the Act is not an unwarranted extension of its coverage, and an acceptance of the Spiveys' argument would ignore the purposes of the Act. We conclude that the RPA applies to spectators at athletic events, when no admission charge is imposed. See generally *Welch v. Douglas County*, 199 Ga. App. 269 (1) (404 SE2d 450) (1991).

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED OCTOBER 19, 1993 —
RECONSIDERATION DENIED NOVEMBER 4, 1993 

*Hudson & Solomon, James D. Hudson*, for appellants.

*Newton, Smith, Durden, Kaufold & Rice, Wilson R. Smith, Jiles M. Barfield, Wilkes, Johnson, Smith & Knox, J. Alexander Johnson*, for appellees.