A95A2365. SOUTH GWINNETT ATHLETIC ASSOCIATION, INC. v. NASH et al.
(469 SE2d 276)

JOHNSON, Judge.
After playing in a little league baseball game on property owned by the South Gwinnett Athletic Association, Inc., eight-year-old Adam Nash stayed on the Association's property to watch his younger brother play in a t-ball game. Adam climbed onto a cinder block wall, which was part of an unfinished set of new bleachers, to watch his brother's game. Mark Nash, Adam's father, was coaching third base in the t-ball game when he saw Adam standing on the wall and signaled for him to get off of it. Adam got off the wall and then walked into nearby woods where he found a three-foot chain. Adam returned to the wall and hooked one end of the chain around a bolt that was sticking out of the top of the wall. Adam then began climbing the side of the wall, using the chain to pull himself upwards. Adam was about halfway up the wall when it collapsed. Adam's leg was injured in the fall. Adam, by his next friend Mark Nash, and Mark Nash individually, sued the Association for failure to guard or warn against a dangerous condition. The lawsuit was tried before a jury, which returned a verdict in favor of the Association. The Nashes filed a motion for a new trial, challenging the sufficiency of the evidence and the jury charge. The trial court granted the Nashes' motion. The Association then moved for summary judgment on the ground that it cannot be held liable under Georgia's Recreational Property Act, OCGA § 51-3-20 et seq. The trial court denied that motion, but granted the Association a certificate of immediate review. This Court granted the Asso-

ciation's application for interlocutory review.

1. The Association correctly asserts that it is shielded from liability by the Recreational Property Act. The purpose of the Act is to encourage both public and private landowners to make their property available to the public for recreational purposes by limiting the owners' liability. OCGA § 51-3-20; see *Maleare v. Peachtree City Church of Christ,* 213 Ga. App. 593, 594 (1) (445 SE2d 321) (1994). In order to achieve this purpose, the "Act specifies that 'an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes' may not be held liable for personal injuries resulting from unsafe or defective conditions existing on the premises, unless such injuries resulted from willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity. OCGA §§ 51-3-23; 51-3-25 (1). See also OCGA § 51-3-22." (Citation and punctuation omitted.) *Quick v. Stone Mtn. Memorial Assn.,* 204 Ga. App. 598 (420 SE2d 36) (1992).

The Association avers that it permitted people to use its property without charge for recreational purposes. Although the Nashes have not challenged these averments, we must review the evidence to determine if the Act applies to the Association. In deciding whether the Act applies, "[t]he important criterion is the purpose for which the public is permitted on the property. If the public is invited to further the business interests of the owner — e.g., for sales of food, merchandise, services, etc. — then the [Act] will not shield the owner from liability even though the public receives some recreation as a side benefit." *Cedeno v. Lockwood, Inc.,* 250 Ga. 799, 802 (2) (301 SE2d 265) (1983). In the instant case, there is no evidence that the public was invited onto the Association's property to further the Association's business interests. Instead, the evidence shows without dispute that the Association is a non-profit organization founded to operate athletic and recreational programs for young people, and that the Association's property was used for those programs. Thus, there is no question that the property is used for recreational, not business, purposes.

We also agree with the Association's averment that it did not charge the public to use its property for recreation. " 'Charge' is defined in the Act as 'the admission price or fee asked in return for invitation or permission to enter or go upon the land.' OCGA § 51-3-21 (1)." *Majeske v. Jekyll Island &c. Auth.,* 209 Ga. App. 118, 119 (1) (433 SE2d 304) (1993). In the current case, the Association charges a little league registration fee, although this fee is waived as to any child in need of free service. The fee covers expenses such as uniforms for the children, umpires, lights, water and sanitation. Because the fee is needed to defray the costs of operating the league, and is not an

admission price required for permission to enter onto the land, it is not a charge to the public as contemplated by the Act. See *Spivey v. City of Baxley*, 210 Ga. App. 772, 774 (437 SE2d 623) (1993); *Majeske*, supra at 119-120 (1). Moreover, at the time of his accident, Adam Nash was not playing baseball, but was a spectator at his brother's game. It is uncontroverted that Adam, like any other spectator, was not charged any fee to watch the game because the Association's ball fields are open to the public to spectate free of charge. Consequently, at the time of his injury, Adam Nash was on the Association's public recreational property at no charge. See *Spivey*, supra.

The Nashes' primary argument is that the Association is not shielded by the Act due to its wilful and malicious failure to warn them that the bleachers, which were under construction, were dangerous because the mortar in the cinder block walls was still wet and not fully dried. We disagree with this argument. At trial, the Nashes presented no evidence that the mortar in the wall from which Adam fell was still wet. Likewise, on appeal, they have made no citation to the record or transcript supporting their allegation that the mortar was wet. Our own review of the entire record and transcript has uncovered no evidence to support such a finding. On the contrary, we find only that the Association introduced testimony that at the time of the accident the mortar should have dried. The Association's evidence showed that the mortar takes two to three days to dry, and that at the time of Adam Nash's fall the mortar had been drying for nearly three and one-half days. Thus, the factual premise of the Nashes' argument is not only unsupported, but is actually contradicted, by the evidence. Nevertheless, even assuming that there is a genuine issue of fact as to whether the mortar was dry, there still is no evidence that the Association acted wilfully or maliciously.

"A wilful failure to guard or warn would require actual knowledge of the owner that its property is being used for recreational purposes; that a condition exists involving an unreasonable risk of death or serious bodily harm; that the condition is not apparent to those using the property; and that having this knowledge, the owner chooses not to guard or warn, in disregard of the possible consequences. This test excludes either constructive knowledge or a duty to inspect." (Citation and punctuation omitted.) *Edmondson v. Brooks County Bd. of Ed.*, 205 Ga. App. 662, 663 (423 SE2d 413) (1992). Here, the first prong of the test is met because the Association knew that its property was being used for recreational purposes. But none of the other three prongs of the test is present in this case.

The condition in question, the unfinished bleachers, did not involve an unreasonable risk of serious injury or death. Building bleachers at a baseball field is a reasonable thing to do and the cement wall standing alone presented no risk or danger. It only became dangerous

when Adam Nash began using a chain to climb up it. Moreover, even assuming for the sake of argument that the unfinished bleachers presented a dangerous condition, there is no evidence that the Association had any knowledge that this condition was not apparent to people using the property. On the contrary, Adam, both of his parents, and two other witnesses for the Nashes all testified that it was obvious that the bleachers were unfinished and still under construction. Additionally, when Mark Nash first saw Adam on the wall, he motioned for him to get off of it, and Ms. Nash testified that she knew there was a danger that Adam might fall off the wall. Adam himself admitted that he knew he might fall. The uncontroverted evidence thus shows that the Nashes appreciated the danger of the condition of the unfinished bleachers. See *Edmondson*, supra at 663-664.

As to the fourth part of the test, the commissioner of the Association's t-ball league testified that he, prior to the game in which Adam's brother played, warned people about the unfinished bleachers and asked adults to keep children away from it. Three other witnesses verified that the commissioner gave this warning. Although the Nashes and two other witnesses said that they did not hear this warning, they make no claim that the warning was not in fact given. Thus, although these people may not have been in a position to hear the warning, there is no evidence that the warning was not actually given. The Association therefore did not wilfully and maliciously choose not to warn anyone about the condition of the bleachers. Even though its warning may not have been sufficient to reach all people present on the property, such insufficiency amounts at most to negligent, not wilful or malicious, behavior. "A wilful failure imports a conscious, knowing, voluntary, intentional failure, a purpose or willingness to make the omission, rather than a mere inadvertent, accidental, involuntary, inattentive, inert or passive omission." (Citations and punctuation omitted.) *Quick*, supra at 600. Because there is no evidence that the Association wilfully or maliciously failed to warn or guard against the condition of the unfinished bleachers, the trial court erred in denying the Association's motion for summary judgment. See *Welch v. Douglas County*, 199 Ga. App. 269, 270 (2) (404 SE2d 450) (1991); *Ga. Marble Co. v. Warren*, 183 Ga. App. 866, 867-868 (1) (360 SE2d 286) (1987).

2. Due to our ruling in Division 1, we need not address the Association's remaining arguments.

*Judgment reversed. Birdsong, P. J., and Smith, J., concur.*

DECIDED FEBRUARY 7, 1996.

*Goodman, McGuffey, Aust & Lindsey, Kathryn A. Cater,* for ap-

pellant.

*Crecelius & Crecelius, Bill W. Crecelius, Jr.,* for appellees.