### A01A0889. COOLEY v. CITY OF CARROLLTON et al.
(547 SE2d 689)

PHIPPS, Judge.

The City of Carrollton provided free after-school recreational and swimming therapy to certain disabled individuals at a pool owned or maintained by West Georgia College. Demond Baker was a participant in the program. Myrtle Cooley, his mother, sued the city, its employees Kimberly Pullen and David Weeks, and others, seeking damages for injuries allegedly sustained by Baker when he became submerged in water during one of the program sessions. Cooley charges the city and its employees with failure to supervise and control program activities and with failure to guard against a dangerous condition. The trial court granted summary judgment to the city and its employees on grounds that they are immune from liability under the Recreational Property Act (RPA) and under a release from liability for personal injury claims executed by Cooley before her son's mishap. We agree that the city and its employees are entitled to summary judgment under the RPA. We, therefore, affirm without reaching issues relating to the release.

Pullen and Weeks were primarily responsible for supervising the swim program. Pullen was the director of the program. Weeks is the recreational department swim coach. The program was open to students in the City of Carrollton and Carroll County schools, and to young adults, with any sort of physical or mental disability. Program participants ranged from children who required individual supervision to competitive swimmers preparing for the Special Olympics. Baker was a fifth grade student and did not know how to swim.

Pullen testified that, pursuant to an oral agreement, the college gave the city exclusive use and control of its pool during program sessions and that she did not allow anyone other than program participants in the pool. She further testified that department policy was never to allow participants in the water unless Weeks was there.

On the day in question, there were approximately 20 program participants at the pool. The program did not begin at the scheduled time because Weeks was late. Mike Snyder, a West Georgia College student employed by the city as a lifeguard, was also at the pool awaiting Weeks's arrival. Snyder, however, was not on duty at the time and was wearing street clothes doing homework in a chair by the pool.

After Weeks arrived, Pullen saw him walking toward the pool. She then accompanied the participants into the pool area. Pullen entered the shallow end of the pool with some of the participants. Other participants entered the deep end. Baker went into the middle area of the pool, but then climbed out of the pool and began to play.

Unnoticed by Pullen, Weeks made a detour into an office to place a telephone call rather than proceeding directly to the pool. Before Weeks entered the pool area, Baker fell into the pool and became submerged in the water after trying to swim toward the deep end. One of the program participants alerted Snyder, who jumped into the pool and rescued Baker. At or about the time Snyder pulled Baker out of the pool, Weeks arrived. After Weeks applied mouth-to-mouth resuscitation, Baker regurgitated and began to breathe. He was then taken to the hospital by ambulance. After being discharged from the hospital, Baker began experiencing certain physical problems requiring his rehospitalization. He testified in his deposition that these problems lasted a few weeks. According to Pullen, Baker was submerged between 30 and 50 seconds.

The trial court did not err in awarding summary judgment to the city and its employees under the RPA. "The purpose of the RPA is to encourage property owners to make their property available to the public for recreational purposes by limiting the owners' liability. [Cit.]"[1] The RPA applies to "an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes."[2] In general, the RPA provides that such owner owes no duty of care to keep the premises safe or to give warning of any dangerous condition or activity.[3] And it does not confer upon recreational users of the property the legal status of an invitee or licensee to whom a duty of care is owed,[4] except that there is no limitation on the owner's liability for wilful or malicious failure to guard or warn against a dangerous condition or activity.[5]

" 'A wilful failure imports a conscious, knowing, voluntary, intentional failure, a purpose or willingness to make the omission, rather than a mere inadvertent, accidental, involuntary, inattentive, inert, or passive omission.' [Cits.]"[6] "Malice means . . . either an actual intent to cause the particular harm produced or the wanton and wilful doing of the act with an awareness of the plain and strong likelihood that harm may result. [Cit.]"[7]

---

[1] *Cedeno v. Lockwood, Inc.*, 250 Ga. 799, 801 (2) (301 SE2d 265) (1983).
[2] OCGA § 51-3-23.
[3] OCGA § 51-3-22.
[4] OCGA § 51-3-23.
[5] OCGA § 51-3-25 (1).
[6] *Spivey v. City of Baxley*, 210 Ga. App. 772, 774 (437 SE2d 623) (1993).
[7] *Bowers v. State*, 241 Ga. App. 122, 123 (1) (526 SE2d 163) (1999).

Importantly, the RPA defines "owner" as "the possessor of a fee interest, a tenant, a lessee, an occupant, *or a person in control of the premises.*"[8] Cooley argues that although the city invited Baker and others to use the college pool for recreational purposes without charge, the city does not qualify as an "owner" under the RPA because it was not "in control of the premises" during program sessions.

Cooley bases this argument on evidence showing that the city's scheduling of the pool had to be approved by college personnel, that Pullen was not provided with a key to the pool until she arrived on the premises for each session, and that the city had no involvement with management or maintenance of the pool. This evidence, however, merely establishes that the college (or the university system of which it is a part) retained ownership of the pool while granting a license authorizing the city to use it during program sessions.[9] The evidence establishes without contradiction that the city, with the permission of the college, was in control of the pool premises at those times. Therefore, the city qualifies as an owner under the RPA.

As such, the city and its employees are liable only for wilful or malicious failure to guard or warn against a dangerous activity or condition. Because it is undisputed that Pullen allowed the children to enter the pool based on the mistaken belief that Weeks was proceeding to the pool area at the same time, the evidence is insufficient to show a wilful or malicious omission by the city or its employees. Therefore, the grant of summary judgment in their favor was proper.

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED APRIL 3, 2001 —
RECONSIDERATION DISMISSED APRIL 26, 2001.

*Graylin C. Ward*, for appellant.

*Thurbert E. Baker, Attorney General, Brenda A. Raspberry, Assistant Attorney General, Crim & Bassler, Harry W. Bassler, Wiggins & Camp, William J. Wiggins, Caryl S. Black*, for appellees.

---

[8] (Emphasis supplied.) OCGA § 51-3-21 (3).

[9] Contrary to argument advanced by Cooley, the Statute of Frauds (OCGA § 13-5-30 (4)) does not apply to such agreements. See *Barton v. Gammell*, 143 Ga. App. 291, 293 (2) (a) (238 SE2d 445) (1977).