John DOE, Plaintiff,

v.

**CITY OF LAFAYETTE, INDIANA,**
Defendant.

No. Civ. 4:00CV0076AS.

United States District Court,
N.D. Indiana,
Hammond Division at Lafayette.

Sept. 14, 2001.

E. Paige Freitag, Equal Employment Opportunity Commission, Kenneth J. Falk, Indiana Civil Liberties Union, Indianapolis, IN, for John Doe.

Jerome L. Withered, Withered, Corrigan and Service, Lafayette, IN, for City of Lafayette, Indiana.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This matter is before the court on the parties, John Doe and City of Lafayette, Indiana ("City") cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. FACTUAL BACKGROUND

The material facts in this case are not in dispute. John Doe has a long history of criminal behavior regarding children. He has numerous arrests and convictions ranging from child molestation to various misdemeanors including: voyeurism; exhibitionism and window peeping. (Dep. Doe at p. 11–16, 20–22). Doe's last conviction was in 1991 for attempted child molesting. (Dep. Doe at p. 17). His sentence included four years of house arrest and four years of probation in Lafayette. During his probation and house arrest he was not restricted from entering the Lafayette city parks. (Aff. Doe at ¶ 3). Doe has received various types of out-patient treatment for sex-addiction since the time of his arrest. (Dep. Doe at p. 31).

Doe has also received treatment for his addiction from Dr. Patricia Moisan–Thomas, Ph.D., an addictions counselor, as well as attending a sex offenders anonymous group. (Dep. Doe at p. 27, 31–32). Doe has not engaged in any incidents of molesting, voyeurism, exhibitionism since 1991. (Aff. Doe at ¶ 2). Dr. Moisan–Thomas has opined that Doe will always have inappropriate thoughts about sex. (Aff. Moisan–Thomas at ¶ 9). Doe admits to having inappropriate thoughts which he finds to be extremely unpleasant and has resumed taking drugs to alleviate his sexual urges. (Dep. Doe at p. 26–27). Dr. Moisan–Thomas has opined that there is no guarantee that Doe will never reoffend, however she feels that he is in control of his urges even without his medication. (Dep. Moisan–Thomas at 26–27, 33–35).

Sometime in January 2000, Doe began having inappropriate sexual thoughts about children. He then walked to Murdock Park where he saw a number of youths in their early teens and watched them from a distance for about 30 minutes. (Dep. of Doe at 23–28). Doe had fantasies

about exposing himself or having some sort of sexual contacts with the youth. (Id. at 29). According to Doe, he recognized that these thoughts were inappropriate and then left the park. (Id. at 29).

Doe became extremely upset about the incident. He then reported the occurrence to Dr. Moisan–Thomas and his sex offenders group. (Aff. Moisan–Thomas at ¶ 6; Aff. Doe at ¶ 4). As a result of an anonymous source, Doe's former probation officer was informed that he was sitting in the park and watching children. (Reed at 8). The probation officer contacted the Lafayette Police Department and reported the incident. Subsequently, a discussion was held between Lafayette Police Chief Reed, Superintendent Mayes and the city attorney on the appropriate course of action. (Reed at 11–12). Based upon that meeting, the Park's Department issued an order to Mr. Doe which stated the following:

Due to reports of your improper behavior toward juveniles using city park property, you are hereby notified that you are not allowed to enter any city park property, including Columbian Park at any time for any purpose. If you are observed on park property, you will be arrested for trespass. (Reed at 10–13, Ex. 3)

The city of Lafayette has several large parks within its territorial limits. (Dep. Mayes at 3–9). The parks provide activities such as softball, swimming and numerous other activities. (Id at 5–6). The various parks are patrolled by a security force connected to the Parks and Recreation Department as well as by the Lafayette Police Department. (Dep. Reed at p.

14). The Superintendent of the Parks and Recreation Department has delegated to the head of security the authority to ban individuals from the City's parks. (Mayes at 21). The Superintendent admits that there are no documents or written procedures for banning individuals from the parks.[1]

Ban orders are typically issued in instances where teenagers or young adults have destroyed property or interfered with other park patrons. (Mayes at 17–18). The ban order is issued and the individual is then informed that if he or she returns to the park during the time that the order is in effect he or she will be arrested for trespass. (Id. at 20). Typically, ban orders are issued for a week or a summer in duration. (Id. at 19). In this instance, Doe was issued a permanent ban order from all city parks. (Reed at p. 10–13, Ex. 3).

Doe seeks a lifting of the ban order in order to partake in a softball league which he participated in before the ban order, attend events at Loeb Stadium in Columbian Park, and attend outings in the park if they should arise. Furthermore, he contends that the ban prevents him from walking in the park with his adult friends. (Id.).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c) Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265

---

1. As provided by Indiana Law, a city may adopt an ordinance creating a department of parks and recreation. Ind.Code § 36–10–3–3 (Michie 1999). The department consists of a park and recreations board, a superintendent and other personnel that the are deemed necessary by the board. Id. Once established the board is then vested with the power to establish rules governing the use of the park and recreation facilities. Ind.Code § 36–10–3–10. Here like many large cities and towns in Indiana, the city of Lafayette has vested the governance of its city parks to the Department of Parks and Recreation. The current superintendent of the Lafayette Department of Parks and Recreation is Vicki J. Mayes.

(1986). The court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Here there are no issues of material fact in and therefore summary judgment is appropriate with respect to the disputed issues of law.

## III. DISCUSSION

This case presents an issue of first impression in this circuit; whether a convicted sexual offender who is no longer serving a sentence or probation can be permanently banned from a city park after entering the park, watching young persons in the park and having inappropriate sexual thoughts about those young persons. Doe contends that the imposed ban order violates his First Amendment rights by punishing him for mere inappropriate thoughts and his substantive due process rights to enter the Lafayette city parks.[2]

The concerns of sexual predation upon this nation's children population is long standing and well documented. See Cornwell, Protection and Treatment: The Permissible Civil Detention of Sexual Predators, 53 Wash. & Lee L.Rev. 1294 (1998). During the 1930s several states had legislation in place to detain "sexual psychopaths," "sexually dangerous persons," and "sex offenders." See Swanson, Sexual Psychopath Statutes: Summary and Analysis, 51 J.CRIM.L. CRIMINOLOGY & POL. SCI. 215, 224–35 (1960–1961). More recently, states have enacted commitment statutes and notice statutes which serve to prevent future sexual predatory acts. See

Wash.Rev.Code Ann §§ 71.09.010–.120 (West 1992 & Supp.1995) (Civil Commitment Statute for Sexual Predators) and Ind.Code § 5–2–12–1, et seq. (Indiana's Sex Offender Registration statute). Today nearly every state has enacted some form of notice registration of convicted sexual offenders. These statutes were prompted by federal legislation that restricted federal funds for failing to enact these certain notification requirements. 42 U.S.C. § 14071.

■ In the context of general public welfare, states have used the exercise of their police powers in an effort to ensure the safety and health of its public. Generally, states are free to impose restrictions that have a rational relation to the goal of public safety. See *Robinson v. California*, 370 U.S. 660, 666, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (asserting that a state may impose "a compulsory treatment, involving quarantine, confinement, or sequestration" to promote the general welfare); *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 486–88, 75 S.Ct. 461, 99 L.Ed. 563 (1955); See also; Laurence H. Tribe, American Constitutional Law s 8–7 at 582 (2d. ed.1988) (entailing deferential approach to regulatory enactments to promote public goals). Undoubtedly, the city of Lafayette has strong and compelling interests in preventing sexual criminal acts upon its young.

Notwithstanding its strong public safety concerns, the city of Lafayette also has concerns of possibility lawsuits by various private parties if after learning of Doe's actions it failed to affirmatively act. See *Benton v. City of Oakland City*, 721 N.E.2d 224, 232–233 (Ind.1999). ("all governmental units are bound both

---

**2.** Interestingly, Doe does not argue that his procedural due process rights have been violated in any way. Although the court has some concerns as to the process employed by

the city in issuing such a permanent ban from its city parks, any argument as to those procedures is now waived.

directly and under the theory of respondeat superior, by the common law duty to use ordinary and reasonable care under the circumstances."); *Angell v. Hennepin County,* 565 N.W.2d 475, 479 (Minn.App.1997), aff'd, 578 N.W.2d 343 (Minn.1998). ("Plaintiff sued Hennepin County, the HCRRA, the City of Minneapolis, and Minneapolis City Parks and Recreation Board alleging negligent failure to maintain the said premises, negligent failure to warn of an ultra hazardous condition or negligent failure to erect barricades to prevent injury."); *Spivey v. City of Baxley,* 210 Ga.App. 772, 774, 437 S.E.2d 623 (1993). (Failure to warn of dangerous condition). Thus, not only did the city of Lafayette have strong public safety and health concerns, it was put on notice by a reliable source that a convicted sex offender had been to one of the city parks and was having inappropriate sexual urges of the children in that park. Thus, it was put on notice and was using ordinary and reasonable care under the circumstances in attempting to protect the public.

## A. WHETHER THE CITY'S BAN ORDER VIOLATES THE PLAINTIFF'S FIRST AMENDMENT RIGHTS

■ Doe begins with the proposition that the city's ban order impermissibly violates his First Amendment right by restricting him from the parks because of his thoughts. The First Amendment provides the following:

Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. U.S.C.A. Const.Amend. 1.

Ordinarily, in order for a violation of the First Amendment to occur, there first must be some form of expressive speech or conduct that is intended to convey a message. *City of Chicago v. Morales,* 527 U.S. 41, 52–53, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). Therefore, Doe must demonstrate that the ban order has somehow impinged upon his First Amendment rights.

■ Doe has failed to identify what message he seeks to convey and how this ban order has violated his First Amendment right to do so. In *Paris Adult Theatre I v. Slaton,* the Court opined that "preventing unlimited display or distribution of obscene material, which by definition lacks any serious literary, artistic, political or scientific value as communication is distinct from a control of reason and the intellect." (internal citations omitted). 413 U.S. 49, 67, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973).[3] In *Paris Adult Theatre,* the Court went on to find that:

Where communication of ideas, protected by the First Amendment, is not involved, or the particular privacy of the home protected by *Stanley,* or any of the other "areas or zones" of constitutionally protected privacy, the mere fact that, as a consequence, some human "utterances" or *"thoughts"* may be incidentally affected does not bar the State

---

**3.** The Court has long held that obscene conduct and expressions of obscenity especially outside of the privacy of one's own home is not protected by the First Amendment. See *Paris Adult Theatre I v. Slaton,* 413 U.S. at 69, 93 S.Ct. 2628; *Roth v. United States,* 354 U.S. at 489, 77 S.Ct. 1304. (holding that the protection of the First Amendment did not extend to obscene speech, which was to be identified

by inquiring "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."). Here there can be no question that any conduct, thought or expression held by Doe would be considered obscene and there First Amendment protections are inapplicable.

from acting to protect legitimate state interests. (emphasis added). 413 U.S. at 67, 93 S.Ct. 2628. Cf. *Roth v. United States,* 354 U.S. 476, 483, 485–487, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Beauharnais v. Illinois,* 343 U.S. 250, 256–257, 72 S.Ct. 725, 96 L.Ed. 919 (1952).

Therefore, a city ordinance or ban that has some incidental consequence on an individual's thoughts is not a bar to that city in acting to protect legitimate public interests.

■ Doe has failed to articulate any form of expressive conduct or message which has been impinged by his denial of access to the city parks warranting the protection of the First Amendment. Here Doe contends that he is being punished for merely having inappropriate sexual urges towards children playing in one of Lafayette's city parks. However, a closer examination of the facts reveal that not only did he have these thoughts but that he acted upon them by going to the Park and actively seeking out the children and then remaining there to watch them for some fifteen to thirty minutes. Doe cites the Supreme Court's opinion in *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) for the proposition that his First Amendment rights have been violated by the city. In making this claim, Doe contends that the ban ordinance impermissibly attempts to control his "thoughts" and that this violates his constitutional rights.

In *Stanley* the Supreme Court held that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime. In that case, Stanley was arrested for possessing various obscene materials in his private residence. *Id.* at 558, 89 S.Ct. 1243. There the Court sought to distinguish a State's power to regulate obscenity under various settings. *Id.* at 568, 89 S.Ct. 1243. Princi-

pally, *Stanley* stands for the proposition that a state cannot control the consumption and possession of obscene and sexual materials, including one's thoughts about such matters, by an individual in the privacy of one's own home. *Id.* at 564, 89 S.Ct. 1243. The holding in that case rested firmly upon the strong privacy interest that an individual has in the privacy of one's own home. Id. at 564, 89 S.Ct. 1243. The same privacy interest cannot be extended to a quintessential public place such as a city park. Therefore, Doe's analogy to the protection of his thoughts in the city parks to the facts presented in *Stanley* are inapposite.

As in *Paris Adult Theatre,* the city of Lafayette is not attempting to control the mind or thoughts of Doe at the city parks. 413 U.S. at 67, 93 S.Ct. 2628. Nor is the city of Lafayette's ban order an attempt to control the thoughts of Doe in the privacy of his home. Rather, the ban order is an attempt to protect the health and welfare of its younger citizens from potential molestation, exhibitionism or other sexual acts from a convicted sex offender with an admitted continued sexual addiction. Here any incidental impact upon Doe's "thoughts" does not bar the city of Lafayette's legitimate interests in protecting its youth.

**B. WHETHER CITY'S BAN ORDER HAS VIOLATED THE PLAINTIFF'S DUE PROCESS RIGHTS**

Next, Doe argues that the ban order issued by the city of Lafayette violates his due process rights afforded to him under the Fourteenth Amendment. Specifically, Doe claims that the ban order violates his alleged fundamental right to enjoy and wander through a public park. The Supreme Court recently addressed the question of whether a person's right to remain in the public area of his or her choice, and

to loiter there for *innocent purposes,* according to inclination, constituted a protected "liberty" interest under the Due Process clause. (emphasis added) See *City of Chicago v. Morales,* 527 U.S. at 55, 119 S.Ct. 1849; supra. Although a plurality of the court found that such a liberty existed, the Court nevertheless relied on the vagueness doctrine to strike down that statute on its face. *Id.* Here the ban order is narrowly drawn to a narrow set of facts and a single individual. Therefore, any application of cases dealing with the doctrines of vagueness or over breadth simply do not arise in this case. Thus, the court must address Doe's specific asserted right in resolving his substantive due process claim.

The Supreme Court has instructed the lower courts to undergo a two-step analysis in ascertaining whether substantive due process violation has occurred. *Washington v. Glucksberg,* 521 U.S. 702, 720–721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). The analysis begins with a careful and narrow description of the asserted right. *Id.* Next, an examination is required to ascertain whether that right is manifested in "our Nation's history, legal traditions, and practices." *Id.* at 720–721, 117 S.Ct. 2258; See also; *Collins v. Harker Heights,* 503 U.S. 115, 125–126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

### 1. Doe has not identified a fundamental "liberty" interest

■ Doe contends that it is a fundamental "liberty" right to enjoy and wander through the various city parks in Lafayette. However, he fails to demonstrate that such a legally recognized right exists in light of our Nation's history and legal tradition. Doe's reliance on the Supreme Court's recent decision to establish a liberty right to wander and enjoy a public place is unavailing. *Morales* has no applicability to the facts of this case for two important reasons.

First, in *Morales* the purported liberty interest established in that case was based upon the right to loiter for innocent purposes. Here, the city of Lafayette's ban order is based narrowly on Doe's act of entering a city park to watch children and fantasizing about committing sexual acts with those children. Although, he did not attempt to commit any criminal acts, his intentions cannot be classified as being purely innocent. Nowhere amongst the submitted evidence is any indication that Doe was originally in the park that day for an innocent purpose (i.e. walking through or playing baseball), rather he was there because of his sexual urge to watch children. Furthermore, Doe submits several types of activities that he would like to do which if considered by themselves would be normal innocent purposes for being in the park. However, Doe has not used the city's park system for such normal innocent purposes within the previous ten years, rather his only visit to the park was in response to his sexual urge to watch innocent children play in the park and act in some criminal or inappropriate manner with those children.

Second, *Morales* was decided primarily on grounds of over breadth and vagueness. 527 U.S. at 55, 119 S.Ct. 1849. ("There is no need, however, to decide whether the impact of the Chicago ordinance on constitutionally protected liberty alone would suffice to support a facial challenge under the over breadth doctrine. For it is clear that the vagueness of this enactment makes a facial challenge appropriate.") (internal citations omitted). Here the ban order is narrowly drafted based upon a limited set of credible and reliable facts and drawn carefully to a single individual who is considered to be a serious threat to the public based upon his prior history and recent actions.

Neither the Supreme Court nor the Seventh Circuit has addressed whether intrastate travel or the freedom of movement within a state constitutes a fundamental liberty interest. *Chavez v. Illinois State Police*, 251 F.3d 612, 637–47 (7th Cir.2001) (finding that the district court erred in failing to find a violation of the plaintiff's right to interstate travel.) However, the court finds the Sixth Circuit's opinion in *Thompson v. Ashe*, 250 F.3d 399, 406 (6th Cir.2001) to be on point with respect to Doe's fundamental right to freedom of movement in this case.

In *Thompson*, the plaintiff argued that a no-trespass policy instituted by the Public Housing Authority prohibiting him from accessing the residential public housing infringed upon his Fourteenth Amendment rights of "freedom of movement" and intimate association. *Thompson*, 250 F.3d at 406. However, the Sixth Circuit determined that such a "freedom of movement" right did not exist in light of the fact that the policy only restricted intrastate travel. *Id.* The court of appeals went on to determine that because the policy did not implicate any fundamental right, a rational basis standard would be used in reviewing the policy. *Id.* at 407.

Doe cites to two cases for the proposition that there exists a right for individuals to be in public places despite recent criminal activities. See *Johnson v. Cincinnati*, 119 F.Supp.2d 735 (S.D.Ohio 2000); *New York v. Andrews*, 186 Misc.2d 533, 719 N.Y.S.2d 442 (N.Y.Sup.Ct.2000). However, those cases are distinguishable from the facts presented here. In *Johnson* the court determined that such an order impinged upon a fundamental right (familial association) as well as the fundamental right to movement.. Here there is no similar impingement upon an established fundamental right as the case in *Johnson*. Furthermore, *Johnson's* precedential value as it relates to the freedom of movement

intrastate appears to be quite suspect in light of the Sixth Circuit's recent pronouncement in *Thompson v. Ashe*, 250 F.3d 399 (6th Cir.2001).

In *Andrews*, the City of New York attempted to use the equitable powers of the court to enter an injunction that prevented prostitutes and pimps from an area of the city. *City of New York v. Andrews*, 186 Misc.2d 533, 719 N.Y.S.2d 442 (N.Y.Sup. Ct.2000). The court noted strongly that aside from its constitutional concerns, the attempted use of the court's equity powers was not a proper use. Id. at 454. The determination made in the case relied heavily upon two points: 1) the court's refusal to "serve as an ad hoc alternative to the Criminal Court" and 2) that the intended purpose of the injunction was to eradicate the trade and that purpose would not be achieved by methods employed by the injunction. *Id.* at 453–454. While interesting, this case has no binding precedential value on this court. Furthermore, the court finds that the facts in this case to be quite distinguishable from the facts in *Andrews*.

First, the ban order issued by the city is narrowly drawn to the specific facts and circumstances surrounding Mr. Doe's situation. Doe has been convicted of three separate acts of child molestation in 1979, 1983 and 1991 respectively. Additionally, Doe has been arrested six or seven times for such offenses as voyeurism, exhibitionism and window peeping prior to 1990, mostly involving children. (Doe Dep. at p. 20–22). According to his deposition testimony, in January 2000, Doe entered the city parks to expose himself to and have sexual contact with children. (Doe Dep. at p. 28–29). Again, it is important to note that until that time Doe had not participated in activities in the park or used the park for any purpose in recent years. After being notified of Doe's activities and

reviewing his prior record, the city of Lafayette determined that a ban order was needed in order to protect the numerous children in the city parks from the inherent risk posed by Doe. The ban order was drawn narrowly to protect the strong public policy concerns of the city in protecting its unsuspecting youth from unspeakable sexual acts. Therefore, the undisputed facts as they relate to the narrowly drawn ban order are clearly and wholly focused on the benefit it seeks in protecting the youth of the city.

### 2. The Ban Order must be Reviewed under the Rational Basis Standard

 The appropriate standard to be employed by this court in light of the fact that no fundamental liberty interest has been implicated is a rational basis review. See *Turner v. Glickman,* 207 F.3d 419, 424 (7th Cir.2000); citing *Washington v. Glucksberg,* 521 U.S. 702, 722, 117 S.Ct. 2258 (1997); *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) (stating that a statute that does not implicate a fundamental right will not be deemed to violate the requirements of substantive due process absent a showing that "the statute manifests a patently arbitrary classification, utterly lacking in rational justification"). To survive this review, the ban order must only be rationally related to a legitimate interest.

Here it is undeniable that the city has a strong and legitimate interest in the welfare of its young citizens, whose immaturity, inexperience, and lack of judgment may sometimes impair their ability to exercise their rights wisely. See *Hodgson v. Minnesota,* 497 U.S. 417, 444, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) It is indisputable that state governments have important interests in seeking to secure the safety of their minor citizens. *Dayton Area Visually Impaired Persons, Inc. v. Fisher,* 70 F.3d 1474, 1489 (6th Cir.1995). The ban order as previously stated is nar-

rowly tailored to the specific facts and circumstances involving Doe and therefore advances the legitimate goals of the city. See *Thompson* 250 F.3d at 407. Therefore the court finds that the ban order does not violate his substantive due process rights.

### III. CONCLUSION

For the foregoing reasons the City of Lafayette's motion for summary judgment is now **GRANTED.** Each party to bear its own costs. **IT IS SO ORDERED.**