## A06A2421. COLLINS v. CITY OF SUMMERVILLE.
### (643 SE2d 305)

RUFFIN, Judge.

Jimmy A. Collins was allegedly injured while using a swing in a park owned by the City of Summerville (hereinafter, the "City"). He brought an action against the City, claiming that it negligently installed and maintained the swing equipment. The trial court granted the City's motion for summary judgment, and Collins appeals. Finding no error, we affirm.

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[1] "To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim."[2] On appeal from a grant of summary judgment, we conduct a de novo review of the evidence, and construe the evidence in favor of the nonmoving party.[3] So viewed, the evidence shows that on March 15, 2003, Collins, who was 17 years old, was using a swing at Dowdy Park when the swing's chain became detached from the metal frame supporting it. He fell to the ground and broke his ankle.

When it purchased the swing, the City received instructions from the manufacturer, GameTime, stating that "all equipment should be installed on soft, resilient, energy-absorbing ground surface. Never install play equipment over concrete or asphalt. A fall on [a] hard surface can result in serious injury to the equipment user." They further listed every part necessary for installation of the equipment and directed "[n]ever add components not intended for use with this product." The instructions also provided:

---

[1] See OCGA § 9-11-56 (c).

[2] *Jacobs v. Thomson Oak Flooring,* 250 Ga. App. 56, 57 (550 SE2d 465) (2001).

[3] See id.; *Lee v. Washington Square Homeowners' Assn.,* 273 Ga. App. 392, 393 (615 SE2d 210) (2005).

Replace all worn S-hooks. S-hooks must be completely closed. To close S-hooks properly, use GameTime S-hook pliers. Failure to close S-hooks properly can result in serious injury to the user. *Never* reuse S-hooks.

The S-hook GameTime uses on its equipment has a "unique design of overlap" that varies from a standard S-hook because the design makes it "easier for the end user to know they have closed the S-hook completely."

Part of the apparatus supporting the swing from which Collins fell had been replaced with a chain and a S-hook that were not manufactured by GameTime. The City never bought S-hook pliers from GameTime, and the S-hook at the top of the swing's chain was not properly closed. When Collins's father observed the swing the next day, he noted that the hook attached to the swing's chain was not closed but "straight."

Articles published in the local newspaper in 1998 and 2000 discussed dangerous conditions at playgrounds in the Summerville area, including Dowdy Park. None of the articles mentioned open S-hooks at Dowdy Park, although this was raised as a problem at another City-operated park in 1998. The director of the City's parks and recreation department stated that his department addressed the concerns contained in the 1998 article. In the 2000 article, Dowdy Park was criticized for "[t]otally inadequate fall zone material." While he recalled reading the article, the director did not indicate that the City responded to this alleged hazard.

The City moved for summary judgment on the basis that it had no knowledge of the condition of the S-hook and thus is immune from liability under the Georgia Recreational Property Act. In his opposition to the motion, Collins argued that "the City had knowledge of the dangerous condition of the swing, including but not limited to the 'S'[-]hook and ground surface beneath the swing, and did 'willfully or maliciously fail to guard or warn against [the] dangerous condition, use[,] structure[,] or activity.'" The trial court granted summary judgment to the City.

The Georgia Recreational Property Act is intended "to encourage property owners to make their property available to the public for recreational purposes by limiting the owners' liability."[4] It provides that a property owner who permits its land to be used without charge for recreational purposes owes no duty of care to keep the property

---

[4] (Punctuation omitted.) *Carroll v. City of Carrollton*, 280 Ga. App. 172, 173-174 (633 SE2d 591) (2006).

safe or to warn users of any dangerous condition.[5] The owner may be liable only "[f]or wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity."[6] We have previously held that a wilful failure involves "a conscious, knowing, voluntary, intentional failure, . . . rather than a mere inadvertent, accidental, involuntary, inattentive, inert, or passive omission" and that malice requires "either an actual intent to cause the particular harm produced or the wanton and wilful doing of the act with an awareness of the plain and strong likelihood that harm may result."[7] Thus, the City is entitled to summary judgment unless a genuine issue of material fact exists as to whether the City wilfully or maliciously failed to warn Collins of the swing's dangerous condition.

In order to demonstrate a wilful or malicious failure to warn, Collins must establish that: (1) the City had actual knowledge that its property was being used for recreational purposes; (2) the City had actual knowledge that a condition existed involving unreasonable risk of death or serious bodily harm; (3) the condition was not apparent to those using the property; and (4) the City chose not to warn users, in disregard of the possible consequences.[8] Constructive knowledge is not sufficient, and no duty to inspect is imposed on the property owner.[9] The City agrees that its property was being used for recreational purposes; however, it argues that Collins has failed to show that a genuine issue of material fact exists as to the other three factors.

Collins contends that the following evidence raises a genuine issue of material fact as to whether the City had actual knowledge of a dangerous condition: the City's failure to comply with the manufacturer's instructions for installing and maintaining the swing; an affidavit by a former City councilman stating that he told the City in 1998 that the Dowdy Park playground equipment needed to be replaced; the 1998 and 2000 newspaper articles; and the parks and recreation director's statement that he read the newspaper articles.

1. Collins points to evidence that the City received instructions and warnings about the swing from the manufacturer but failed to comply with them. In order to survive a motion for summary judgment, Collins must present evidence that the City had actual, rather than constructive, knowledge of a dangerous condition. "Even slight

---

[5] See OCGA §§ 51-3-22; 51-3-23.

[6] OCGA § 51-3-25 (1).

[7] (Punctuation omitted.) *Cooley v. City of Carrollton*, 249 Ga. App. 387, 388 (547 SE2d 689) (2001).

[8] See *Ga. Dept. of Transp. v. Thompson*, 270 Ga. App. 265, 269 (2) (a) (606 SE2d 323) (2004).

[9] See id.

evidence will be sufficient to satisfy the plaintiff's burden of production of some evidence on a motion for summary judgment; such evidence may include favorable inferences drawn by the court from the evidence presented."[10] Circumstantial evidence may be used to show actual knowledge; in order to preserve the issue for jury determination, however, the evidence must be such that actual knowledge could be inferred from it.[11] We conclude that evidence that the City was provided written installation instructions describing the dangers of using parts not approved by the manufacturer or placing the swing over certain surfaces is not sufficient to create a jury issue as to whether the City had actual knowledge of these dangers, as no evidence was presented that any employee of the City read these instructions.[12] Given the constraints of the Recreational Property Act's actual knowledge requirement, we cannot infer actual knowledge under these circumstances.

2. Likewise, the affidavit of former City councilman Earl Parris fails to create a genuine issue of material fact as to the City's actual knowledge of either a defective S-hook or an unsafe ground surface under the swing. Parris avers that while he was a councilman, in 1998 and 1999, he informed the City Council that the playground equipment at Dowdy Park needed to be replaced, and that new equipment was purchased in 1999. He does not, however, claim to know anything about the condition of the playground equipment in March 2003, when Collins was injured. That Parris warned the City of dangerous playground equipment, and the City apparently replaced it, is not probative of whether the City had actual knowledge of the equipment being in a dangerous condition four years later.[13]

3. Collins contends that the 1998 and 2000 newspaper articles, which were read by at least one employee of the City's parks and recreation department, gave the City actual knowledge of the dangerous condition of the swing. But neither of the articles mentioned open or defective S-hooks as a problem at Dowdy Park and cannot have conveyed knowledge of such a problem to the City.

---

[10] (Punctuation omitted.) *Dalton v. City of Marietta*, 280 Ga. App. 202, 203 (633 SE2d 552) (2006).

[11] See *Carolina Cable Contractors v. Hattaway*, 226 Ga. App. 413, 416 (487 SE2d 53) (1997) (physical precedent only). The issue of evidence of actual knowledge necessary to survive summary judgment has not been fully explored in the context of Georgia Recreational Property Act cases; however, we find guidance in other cases where a showing of actual rather than constructive knowledge is required for liability, such as those involving negligent entrustment of a motor vehicle.

[12] See *Western Indus. v. Poole*, 280 Ga. App. 378, 381 (2) (634 SE2d 118) (2006) (in negligent entrustment of motor vehicle case, defendant "is not liable merely because he or she, by the exercise of reasonable care and diligence, *could* have ascertained the fact") (emphasis supplied).

[13] See generally *Conner v. Branch*, 185 Ga. App. 565, 566 (364 SE2d 890) (1988).

Conversely, the 2000 article claimed that Dowdy Park had "[t]otally inadequate fall zone material," and a parks and recreation department employee read the article. This is evidence that the City had actual knowledge of the alleged condition of the ground under the swing. But photographs in the record show that there was grass and soil beneath the swing, and Collins has presented no evidence that this condition was one involving unreasonable risk of death or serious bodily harm.[14] Moreover, the condition of the ground was readily apparent to any user of the swings.[15] As no genuine issues of material fact remain as to whether the City wilfully or wantonly failed to warn Collins of the dangerous condition of the swing, the trial court did not err in granting the City's motion for summary judgment.[16]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 7, 2007.

*Sanford M. Hill*, for appellant.

*Hall, Booth, Smith & Slover, Phillip E. Friduss, Kenneth D. Jones*, for appellee.

---

[14] See *Thompson*, supra (summary judgment proper where no evidence presented that storm drain on which plaintiff slipped posed unreasonable risk of death or serious bodily harm); *Quick v. Stone Mountain Mem. Assn.*, 204 Ga. App. 598 (420 SE2d 36) (1992) (no unreasonable risk of death or serious bodily harm found where plaintiff tripped over three- to four-inch rocks in unpaved area covered with wood chips).

[15] See *Ga. Marble Co. v. Warren*, 183 Ga. App. 866, 868 (1) (360 SE2d 286) (1987) (summary judgment appropriate where plaintiff dove into rocky stream, as "[t]he rocky condition of the terrain in and about the stream was open and obvious").

[16] See *Cooley*, supra.