**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 26, 2013**

# In the Court of Appeals of Georgia

A13A0084. GAYLE et al. v. FRANK CALLEN BOYS AND GIRLS
    CLUB, INC.

MILLER, Judge.

Jabari and Ulysia Gayle sued the Frank Callen Boys and Girls Club, Inc. (the "Club") and the Housing Authority of Savannah to recover for personal injuries Jabari sustained during a basketball game at the Club. The trial court granted summary judgment in favor of the Club,[1] finding that the Recreational Property Act, OCGA § 51-3-20 et seq. ("RPA"), precluded the Gayles' claims. On appeal, the Gayles contend that the trial court erred in granting summary judgment to the Club. For the reasons that follow, we affirm.

---

[1] The Housing Authority moved separately to dismiss the Gayles's complaint or in the alternative for summary judgment based on its contention that it is entitled to sovereign immunity. The instant appeal concerns only the trial court's grant of summary judgment to the Club.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations omitted.) *Carroll v. City of Carrollton*, 280 Ga. App. 172, 172-173 (633 SE2d 591) (2006).

So viewed, the record evidence reflects that the Club is a non-profit organization that was founded to provide a safe environment for young people in athletic, learning and recreational activities. The Housing Authority of Savannah, Georgia owns the property where the Club is located; however, the Club is the sole occupant of the property and is in control of the premises.

Recreational activities at the Club include basketball, as well as organized league and non-league sport activities. The Club has a voluntary $2 nominal annual membership fee for minor children who submit applications to join the facility. The purpose of the membership applications and annual fee is to provide a record of children at the facility, defray some of the operating costs for recreational activities and foster a stronger connection between children and the Club. Many members of

2

the Club never pay the fee, and no child is ever turned away from the facility or membership for failing to pay the fee. Additionally, members of the public can enter the facility as spectators to recreational sport activities occurring at the Club.

In 2006, Jabari joined the Club for free and started going there every afternoon after school. In February 2007, then 17-year-old Jabari was playing a pick-up game of basketball in the Club's gymnasium. Jabari was running down the court on a "fast break." Jabari could not slow down. He came into contact with the wire mesh and glass window of an office door which was located behind one of the basketball goals. Consequently, his left hand went through the window, cutting his wrist and tendons. Jabari was treated at the emergency room that night and underwent surgery the next day.

The Gayles subsequently filed this action against the Club and the Housing Authority of Savannah, alleging that the defendants were negligent in maintaining the premises. The Gayles also alleged that the defendants' maintenance of a wire glass door in close proximity to the basketball court, along with their failure to warn or guard against this alleged hazard, constituted a willful and malicious failure to guard or warn against a dangerous condition or activity. The Club moved for summary

judgment, contending that it was immune from liability under the RPA. The trial court subsequently granted the Club's motion for summary judgment on that ground.

In their sole enumeration of error, the Gayles contend that the trial court erred in granting summary judgment to the Club based on their claims that the Club was negligent in failing to keep its premises safe.[2] We disagree.

(a) The RPA pertinently provides that:

an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes does not thereby: (1) Extend any assurance that the premises are safe for any purpose; (2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or (3) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

OCGA § 51-3-23. "The purpose of the RPA is to encourage property owners to make their property available to the public for recreational purposes by limiting the owners' liability." (Punctuation and footnote omitted.) *Cooley v. City of Carrollton*, 249 Ga.

---

[2] The Gayles also alleged in their complaint that the Club was negligent in failing to supervise Jabari during the basketball game and in hiring, training and supervising its employees. The trial court ruled that the RPA precluded all of the Gayles's claims. On appeal, however, the Gayles limited their arguments to their premises liability claim only. Accordingly, they have waived appellate review of the trial court's grant of summary judgment with regard to these additional claims.

4

App. 387, 388 (547 SE2d 689) (2001); see also *Edmondson v. Brooks County Bd. of Ed.*, 205 Ga. App. 662 (423 SE2d 413) (1992). The RPA applies where the property is open to the public for recreational purposes and the owner does not charge an admission fee. See *Edmondson*, supra, 205 Ga. App. at 662.

> The RPA provides the following definitions for determining applicability:
>
> (1) "Charge" means the admission price or fee asked in return for invitation or permission to enter or go upon the land. (2) "Land" means land, roads, water, watercourses, private ways and *buildings*, structures, and machinery or equipment *when attached to the realty*. (3) "Owner" means the possessor of a fee interest, a tenant, a lessee, an *occupant*, or a person *in control of the premises*. (4) "Recreational purpose" *includes, but is not limited to*, any of the following or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites.

(Emphasis supplied.) OCGA § 51-3-21. Moreover, the issue of whether the RPA applies is a question of law for the trial court. See *Atlanta Committee for the Olympic Games v. Hawthorne*, 278 Ga. 116, 117 (1) (598 SE2d 471) (2004).

5

Here, the record evidence supports the trial court's findings that the Club was the sole occupant in control of the property, and the premises[3] was open to the public free of charge. Although the Club has a suggested $2 annual membership fee, children are not required to pay a fee to use the facility, and any member of the public can enter the facility to watch recreational activities without paying a fee.[4] Moreover, the purpose of the voluntary $2 membership fee was to provide a record of children at the facility, defray some of the operating costs for recreational activities and get kids invested in the program. Accordingly, the voluntary fee is not an admission fee required for permission to enter onto the premises, and does not constitute a "charge" to the public as contemplated in the RPA. See, e.g., *S. Gwinnett Athletic Assn. v. Nash*, 220 Ga. App. 116, 117-118 (1) (469 SE2d 276) (1996) (little league registration fee which was needed to defray league operating costs was not an admission fee required for permission to entered onto land, so it was not a charge to

---

[3] Contrary to the Gayles' contention, the RPA is not limited to outdoor activities, since the statute expressly includes buildings and structures when attached to realty. See OCGA § 51-3-21 (2).

[4] The Gayles' reliance on *Hart v. Appling County Sch. Bd.*, 266 Ga. App. 300 (597 SE2d 462) (2004), in support of their argument that the Club was not open to the public is misplaced, because *Hart* involved a fenced-in elementary school playground that was not open to any segment of the public and was only available for use by children enrolled in the school.

6

public as contemplated by the RPA); *Spivey v. City of Baxley*, 210 Ga. App. 772 (437 SE2d 623) (1993) (fee required for participation in softball league was not a charge imposed to obtain permission to enter premises).

Although the RPA does not limit liability "[f]or willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity[,]" OCGA § 51-3-25 (1), the record evidence did not establish that the defendants willfully failed to guard or warn against a dangerous condition. We have previously held that a willful failure

> involves a conscious, knowing, voluntary, intentional failure, rather than a mere inadvertent, accidental, involuntary, inattentive, inert, or passive omission and that malice requires either an actual intent to cause the particular harm produced or the wanton and wilful doing of the act with an awareness of the plain and strong likelihood that harm may result.

(Footnote and punctuation omitted.) *Collins v. City of Summerville*, 284 Ga. App. 54, 56 (643 SE2d 305) (2007); see also *Cooley*, supra, 249 Ga. App. at 388. In order to demonstrate a wilful or malicious failure to warn, the Gayles had to establish that:

> (1) the [defendants] had actual knowledge that [the] property was being used for recreational purposes; (2) the [defendants] had actual knowledge that a condition existed involving unreasonable risk of death or serious bodily harm; (3) the condition was not apparent to those using

7

the property; and (4) the [defendants] chose not to warn users, in disregard of the possible consequences. Constructive knowledge is not sufficient, and no duty to inspect is imposed on the property owner.

(Footnotes omitted.) *Collins*, supra, 284 Ga. App. at 56.

Here, no evidence showed that the Club had actual notice that the glass window constituted a dangerous condition, or that the condition of the glass window was not apparent to those using property. Notably, the evidence showed that wire mesh glass is commonly used in recreational facilities, and no evidence showed that anyone had even been injured by such glass at the Club or any other facility. Additionally, the glass window was an open and obvious condition. Accordingly, the Gayles cannot satisfy their burden of demonstrating a willful failure to warn against a dangerous condition on the premises. See *Collins*, supra, 284 Ga. App. at 57-58 (2)-(3) (no factual issue remained as to whether city willfully failed to warn plaintiff of alleged dangerous condition where plaintiffs failed to show that city had actual knowledge of park swing's defective S-hook or an unsafe ground condition under the swing); *Edmondson*, supra, 205 Ga. App. at 663-664 (plaintiffs could not show that condition

8

of manually-operated merry-go-round on school playground was not apparent to those using the property).[5]

For the foregoing reasons, we conclude that the uncontroverted evidence shows that the RPA precludes the Gayles's claims of negligence against the Club. Therefore, the trial court did not err in granting summary judgment to the Club.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

---

[5] See also *Zellers v. Theater of Stars, Inc.*, 171 Ga. App. 406, 408 (2) (319 SE2d 553) (1984) (no breach of duty to warn where defendant had no actual knowledge of prior incidents involving broken glass doors); *Imperial Investments Doraville, Inc. v. Childers*, 303 Ga. App. 490, 493-494 (2) (693 SE2d 834) (2010) (plate glass in hotel window did not constitute defect or dangerous condition where hotel had no prior notice of any problems with window).