5RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0160P (6th Cir.)
File Name: 01a0160p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ALBERT THOMPSON,
        *Plaintiff-Appellant,*

        *v.*

VICTOR ASHE, Mayor, of the
City of Knoxville; CITY OF
KNOXVILLE; PHIL KEITH,
Chief, Knoxville Police
Department; FRED O.
DEBRUHL, In his capacity as
Executive Director of the
Knoxville Community
Development Corporation;
KNOXVILLE COMMUNITY
DEVELOPMENT
CORPORATION,
        *Defendants-Appellees.*

No. 99-5757

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 97-00838—R. Leon Jordan, District Judge.

Argued: August 11, 2000

1

Decided and Filed: May 14, 2001

Before: NELSON, SILER, and BATCHELDER, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:** James H. Varner, Jr., ESHBAUGH, SIMPSON,
VARNER & WATERS, Knoxville, Tennessee, for Appellant.
Michael S. Kelley, CITY OF KNOXVILE LAW
DEPARTMENT, Knoxville, Tennessee, G. Wendell Thomas,
Jr., KENNERLY, MONTGOMERY & FINLEY, Knoxville,
Tennessee, for Appellees. **ON BRIEF:** James H. Varner, Jr.,
ESHBAUGH, SIMPSON, VARNER & WATERS,
Knoxville, Tennessee, Douglas A. Blaze, UNIVERSITY OF
TENNESSEE LEGAL CLINIC, Knoxville, Tennessee, for
Appellant.   G. Wendell Thomas, KENNERLY,
MONTGOMERY & FINLEY, Knoxville, Tennessee,
Michael S. Kelley, Mark C. Hartsoe, Ronald E. Mills, CITY
OF KNOXVILLE LAW DEPARTMENT, Knoxville,
Tennessee for Appellees.

_____

**OPINION**
_____

ALICE M. BATCHELDER, Circuit Judge.   Albert
Thompson filed a class-action complaint in the district court
pursuant to 42 U.S.C. § 1983 naming as defendants the
Knoxville Community Development Corporation, a public
housing authority, and Fred O. DeBruhl, its Executive
Director ("KCDC"); and the City of Knoxville, Victor Ashe,
the City's mayor, and Phil Keith, the chief of police ("City
defendants").  The complaint designated as members of the
class all persons who had been, were presently or would in the
future be on the KCDC's "no trespassing" list of individuals
barred from the KCDC premises.  The complaint alleged that
the defendants' "no-trespass" program violated the class

constitutional rights, the question of whether the City of Knoxville, its Mayor and Police Chief, are liable for violating plaintiffs' civil rights by enforcing the policy is moot.

For the foregoing reasons, the orders of the district court granting summary judgment to defendants, denying partial summary judgment to Thompson, denying the motion for class certification and dismissing the action are AFFIRMED.

members' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as their rights under Tennessee law. The defendants moved for summary judgment, and Thompson moved for partial summary judgment. The district court denied Thompson's motion, granted summary judgment in favor of the defendants, denied Thompson's motion to certify the class and dismissed the action. Thompson timely appealed. Because we conclude that Thompson has not demonstrated any violation of his constitutional rights by the appellees, we will affirm the judgment of the district court.

## I. BACKGROUND

KCDC is a public housing authority organized under the laws of Tennessee. KCDC manages twelve residential housing developments that provide housing to some 9,000 low-income individuals. As part of its statutory mandate, KCDC is required to provide its tenants with decent, safe, and sanitary places to live. *See* Tenn. Code Ann. § 13-20-102(15)(A), 413. To that end, residential leases at KCDC properties provide that any criminal activity by any member of a resident's household or by any guest is cause for termination of tenancy. The leases entitle residents to "provide reasonable accommodations for . . . guests who must follow KCDC rules during their visits."

To further address the problem of crime on its properties, KCDC has instituted a "no-trespass" policy. As a part of this policy, KCDC compiles a list of individuals who are prohibited from entering KCDC residential rental property. A recent version of the list included the names of 340 people.

KCDC's Vice President for Housing, William Crown, is primarily responsible for maintaining the no-trespass list. Crown employs no formal set of written criteria to determine who should be placed on the list. Rather, he acts when he receives "reliable information" that an individual has been involved in drug activities or violent criminal activities of a nature that pose a threat to KCDC's residents and property. Such information typically comes to Crown in the form of a

request submitted by an officer of the Knoxville Police Department (KPD) or a KCDC housing manager. The request contains some summary information, and it may have an attached event report describing a subject's objectionable conduct. Crown routinely finds that the information contained in a request is sufficiently reliable to place an individual on the no-trespass list without further investigation. On some occasions, Crown has banned individuals after an in-person, verbal request by an officer of the KPD.

Banned individuals are notified of the decision to place them on the no-trespass list. Notification is usually made by personal service of a letter stating that if the person enters any KCDC property, he will be subject to arrest for criminal trespass, although notice is sometimes given verbally by officers of the KPD. The letters do not inform the individual of the reason for the ban, do not place a time limit on the ban, and do not advise the recipient how he or she may seek to be removed from the list.

KCDC properties are prominently posted with "no trespassing" signs. Pursuant to statutory authorization, the City of Knoxville has leased to KCDC certain interior streets and sidewalks within the housing developments for one dollar per year. *See* Tenn. Code Ann. 13-20-110. KCDC, in turn, contracts with the City to provide supplemental police services on KCDC properties. Pursuant to this lease-contract arrangement, the KPD enforces the no-trespass program; KPD officers are instructed by KCDC to arrest any individual found on KCDC property whose name is on the no-trespass list.

No established procedure exists to remove individuals from the no-trespass list. On occasion, however, officials from the KCDC and KPD meet and decide to remove persons from the list. Among the reasons for removal from the list are death, prolonged absence from the Knoxville area or information that the individual no longer presents a threat to KCDC's residents or property.

Federal law requires reasonable accommodation of guests in public housing. The Housing Act mandates that public housing leases not contain any "unreasonable terms and conditions," 42 U.S.C. § 1437d(1)(2), and HUD's implementing regulation requires that public housing leases "shall" provide for "reasonable accommodation" of tenants' guests, 24 C.F.R. § 966.4(d)(1). One federal court has recently found that this regulation "substantively prohibits public housing authorities from unreasonably interfering with tenants' ability to entertain guests in the tenants' public housing apartments." *Diggs v. Housing Authority*, 67 F. Supp. 2d 522, 531-32 (D. Md. 1999). On this basis, the court preliminarily enjoined a Maryland housing project's trespass policy similar to the one in this case.

Thompson, however, lacks standing to raise the interesting question of whether the KCDC's policy violates the rights of tenants who wish to entertain guests who are on the no-trespass list. In *Diggs*, the plaintiffs were themselves public housing tenants; Thompson is not. And even if Thompson were correct that KCDC cannot ban invitees from coming onto the property, Thompson can show injury only if he has been arrested for trespassing while on KCDC property at the invitation of a tenant. As we have explained heretofore in this opinion, it is clear that he cannot make that showing.

As the district court correctly observed, "The court need not decide this issue because the tenants' rights are not issues before the court. No tenant of KCDC housing is a plaintiff in this lawsuit, and the plaintiff does not have standing to assert the tenant's rights." Accordingly, Thompson's arrest was made with probable cause, and did not violate the Fourth Amendment.

Thompson claims that the City's enforcement of the no-trespass policy makes the City Defendants liable under 42 U.S.C. § 1983. Liability under § 1983 attaches only where a policy or custom of the municipality has caused a violation of the plaintiffs' constitutional rights. *See Monell*, 436 U.S. at 690-91. Because Thompson has shown no violation of his

determine whether an officer had probable cause to make an arrest, we examine "whether at that moment the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Donovan v. Thames,* 105 F.3d 291, 298 (6th Cir.1997)(quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)) (internal citations omitted).

It is clear that under the Tennessee criminal trespass statute (Tenn. Code Ann § 39-14-405) there was probable cause for Thompson's arrest. The statute subjects a person to arrest if the person, with knowledge that he does not have the owner's consent to do so, enters or remains on property.[2] The statute further provides that such knowledge will be inferred if notice against entering is given by "personal communication to the person by the owner or by someone with apparent authority to act for the owner." Tenn. Code Ann. § 39-14-405(a)(1). Thompson admits that he has known since at least September 1994 that his name was on the no-trespass list, and that he would be subject to charges of criminal trespass if he entered onto KCDC property. The Knoxville Police Department had been given a copy of the list and knew that Thompson was not permitted to be on the KCDC properties.

In response, Thompson argues that KCDC has no authority to ban invitees of KCDC residents because an "owner" under Tennessee law is simply "a person in lawful possession of the property." See Tenn Code Ann. § 39-14-401(3). He reasons that because KCDC tenants are "owners" for purposes of Tennessee law, an individual does not commit a trespass when he enters KCDC property with a tenant's consent and arrest of such an invitee is therefore an unreasonable seizure under *Terry v. Ohio*, 392 U.S. 1 (1968).

---

[2]The Tennessee Supreme Court upheld the constitutionality of this statute in *State v. Lyons*, 802 S.W.2d 590 (Tenn. 1990). Thompson does not challenge the constitutionality of the statute.

Albert Thompson has been on the no-trespass list for a number of years and has been arrested on KCDC property twenty-three times. One of these arrests—for possession of cocaine for resale—occurred during the pendency of these proceedings. The arrest prompting this case occurred when police, while looking for another man, discovered Thompson in the apartment of a KCDC tenant. Thompson claims that he had come into the KCDC development looking for his brother, and had asked the occupant of the apartment, an acquaintance of his, if he could enter the apartment to use the telephone; he claims that he explained to the police that he had been invited into the apartment, but the police arrested him for criminal trespass anyway.

Thompson then filed this action, claiming that by enforcing the no-trespass policy, KCDC violated the plaintiffs' rights to privacy and freedom of association protected by the First and Fourteenth Amendments; violated the plaintiffs' rights to be free from unreasonable searches and seizures protected by the Fourth Amendment; and violated the plaintiffs' rights to equal protection and due process of law under the Fourteenth Amendment. The complaint further claimed that these actions of the defendants violated the Tennessee Constitution, and that the defendants had maliciously harassed the plaintiffs in violation of Tennessee law.

The district court granted summary judgment to all of the defendants. The court held that Thompson's freedom of association claims were more properly analyzed under the Fourteenth Amendment due process clause and that the complaint did not state a claim under the First Amendment; that the record clearly demonstrated probable cause to arrest Thompson for criminal trespass under the Tennessee Criminal Trespass statute and his arrest did not violate the Fourth Amendment; that Thompson lacked standing to raise the argument—raised in his motion for partial summary judgment—that the tenants of KCDC had a right to invite guests to the premises without subjecting them to arrest for criminal trespass, and in enforcing the no-trespass policy, KCDC exceeded the authority of the Tennessee Criminal

Trespass statute; that assuming Thompson could demonstrate a right, as an invited guest, to visit family and friends residing in KCDC housing developments, that right is not fundamental, and the "no-trespass" policy is rationally related to the legitimate governmental interest in providing a safe housing to the tenants of KCDC. The court further held that because the plaintiffs had not shown that the policy discriminates against any protected groups, the policy did not violate the Fourteenth Amendment's equal protection clause; finally the court held that Thompson had no protected liberty interest in visiting his family and friends on KCDC premises and therefore, he had no right to procedural due process.

## II.  ANALYSIS

We review an order granting summary judgment *de novo*. *Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir. 1994). Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In considering a motion for summary judgment the court must consider "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits if any," in the light most favorable to the non-movant. *Id.* at 323. However, the party opposing the motion may not rely solely on the pleadings and must adduce more than a mere scintilla of evidence; if the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1478-79 (6th Cir. 1989); *Celotex Corp. v. Catrett*, 477 U.S. at 322-23.

Before us, Thompson first argues that there remain for trial genuine issues of fact material to his claims, and particularly to his claim that the Tennessee Criminal Trespass statute does not permit the arrest of one who is on property of the owner with the owner's consent. The district court viewed this

Thompson would be welcome as a visitor in any KCDC apartment. Thompson's real claim, it seems to us, is that he has a liberty interest in associating with KCDC residents, whether he is welcome there or not.

"[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Goldberg v. Kelly*, 397 U.S. 254, 263 (1970). KCDC is mandated by Tennessee law to provide its residents a safe place to live. By contrast, Thompson claims an interest in visiting KCDC residents in their apartments, in the absence of any showing that his visits are welcome, and in the absence of any showing that his ability to visit with these individuals will be substantially limited if he cannot visit them in that particular place. The no-trespass policy impacts Thompson's interest only slightly. We conclude that Thompson's claimed interest is not sufficient to require procedural due process protection.

Finally, we note that even if some due process protection were warranted under these circumstances, Thompson does not claim that he did not have notice that his name had been put on the no-trespass list, and the record reveals that after Thompson learned that he was on the no-trespass list, he met with the executive director of KCDC, defendant DeBruhl, to discuss his status. Thompson made no further effort to be removed from the list. We think that Thompson's meeting with DeBruhl afforded Thompson the opportunity to challenge the policy and its application to him. Nothing further was required.

Thompson also claims that his arrest at the KCDC housing project violates the Fourth Amendment's prohibition of unreasonable seizure of his person. This circuit has held that "arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). To

criminal activity, especially drug-related activity, has created a dangerous environment in many public housing projects."). Banning individuals with criminal histories from entering onto KCDC property reasonably advances that goal. We therefore hold that the no-trespass program does not violate substantive due process.

Thompson argues that procedural defects in the administration of the no-trespass program infringe his Fourteenth Amendment right to procedural due process. Courts have long recognized that the Fourteenth Amendment requires that an individual who is deprived of an interest in liberty or property be given notice and a hearing. *See Harris v. City of Akron*, 20 F.3d 1396, 1401 (1994) ("In *Parratt v. Taylor*, the Supreme Court explicitly held that in some situations a state may satisfy procedural due process by providing 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking'.")(internal citations omitted).

To prevail on a procedural due process claim, however, the claimant must be able to point to a deprivation of some property or liberty interest. *See LRL Properties v. Portage Metro Housing Auth*., 55 F.3d 1097, 1108 (6th Cir. 1995) ("The process requirement necessary to satisfy fourteenth amendment procedural due process comes into play only after plaintiff has shown that it has a property or liberty interest." (quoting *Curtis Ambulance of Fla., Inc. v. Board of County Comm'rs*, 811 F.2d 1371, 1375 (10th Cir.1987) (internal quotation marks omitted)).

As we have already explained, Thompson cannot show that he has any right to be on KCDC premises as an invitee, or that he has any "freedom of movement" interest that is impacted by the no-trespass policy. At best, therefore, Thompson's claim that he has been denied procedural due process hinges on his interest in associating with his family and friends in their KCDC apartments, an interest which, as we have already seen, is not a fundamental liberty interest. Perhaps more pertinent here, however, is the absence of any evidence that

claim as an attempt to raise the rights of KCDC tenants, and held that Thompson lacked standing to raise it. Thompson argues on appeal that because the tenants in the KCDC housing developments are "owners" for purposes of the Tennessee statute, the "no-trespass" policy exceeds the authority of the statute because it does not require the police to determine, prior to arresting someone on KCDC premises who is on that list, whether that person is there by invitation of a tenant. He therefore maintains that the arrest of any person on the premises by invitation exceeds the authority of the statute and violates the rights of the arrestee.

Thompson can raise this claim only if he can show that he was arrested for criminal trespass on KCDC property when he was there by invitation. After a thorough review of the record, we conclude that there is no genuine issue of fact material to this claim and that Thompson cannot make the requisite showing. The arrest which led to this § 1983 action occurred when Thompson was on the KCDC property without invitation. His deposition testimony makes it clear that he had come into the housing development, not by invitation but to look for his brother, and that he initiated the contact with the tenant in one of the apartments and asked for permission to use the telephone. This is the only "invitation" to visit someone in the KCDC properties that Thompson was able to come up with during his deposition. When he was pressed for the names of specific people living in any of the KCDC developments, Thompson was able to recall that he has a brother, two cousins, and at least one friend who live on KCDC properties, but he acknowledged that none of his family members or friends have ever actually invited him to visit them in their KCDC apartments. He complains that no express invitation is necessary, and that many residents in the KCDC developments would like to invite him to visit but they cannot because they know he is on the no-trespass list. This assertion falls far short of providing evidence sufficient to raise a genuine issue of fact, and it is noteworthy that Thompson failed to produce even one affidavit from a friend or family member expressing a desire to have him visit. Finally, the record indicates that Thompson's family is not

close, and that the family members have made little effort to meet with Thompson outside of the KCDC properties.

Thompson next argues that the no-trespass policy infringes his Fourteenth Amendment rights to "freedom of movement" and intimate association. Thompson's claim that the KCDC's policy violates his right to freedom of movement is without merit. To the extent that Thompson refers to the "right to travel," as recognized by our jurisprudence, that right is essentially a right of interstate travel. In *Saenz v. Roe*, the Supreme Court said:

> The "right to travel" discussed in our cases embraces at least three different components. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

*Saenz v. Roe*, 526 U.S. 489, 500 (1999). The KCDC no-trespass policy does not impact any component of Thompson's right to travel to other states. The no-trespass policy restricts Thompson's travel only with regard to his being on KCDC's property. Thompson's inability to visit twelve housing developments in Knoxville obviously does not burden his right to travel interstate.

The district court held that Thompson's claim that the no-trespass policy violates his right to enter into and maintain certain intimate or private relationships must be examined under the substantive due process component of the Fourteenth Amendment, rather than the "freedom of association" preserved by the First Amendment.[1] We agree

---

[1] The freedom to associate guaranteed by the First Amendment protects associational interests related to speech and petition. In *Daniel v. City of Tampa*, 38 F.3d 546 (11th Cir. 1994), the Eleventh Circuit analyzed the plaintiff's claim under the First Amendment because the

with the district court. The Supreme Court "has recognized that the freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights. Such relationships may take various forms, including the most intimate." *Board of Directors of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 544 (1987). The Court has accorded constitutional protection to marriage, *see Zablocki v. Redhail*, 434 U.S. 374, 383-386,(1978); the begetting and bearing of children, *see Carey v. Population Services International*, 431 U.S. 678, 684-686 (1977); child rearing and education, *see Pierce v. Society of Sisters*, 268 U.S. 510, 534-535 (1925); and cohabitation with relatives, *see Moore v. City of East Cleveland*, 431 U.S. 494, 506 (1977). The Court has not extended constitutional protection to mere visitation with family members. Here, Thompson lives separately from his family members and there is no indication in the record that during the years he has been on the no-trespass list he has ever lived, or intended to live with any of them in KCDC properties. We therefore conclude that Thompson has no fundamental right to visit his family members on KCDC property.

Because the no-trespass policy does not implicate any fundamental right, we review it under the rational basis standard. *See Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 172 F.3d 397, 409 (6th Cir. 1999)(citing *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)). To survive rational basis review, the policy need only be rationally related to a legitimate governmental purpose. *See Schenck v. City of Hudson*, 114 F.3d 590, 594 (6th Cir. 1997). The suppression and prevention of crime in public housing is a legitimate goal. *See Rucker v. Davis*, 237 F.3d 1113, 1116 (9th Cir. 2001)("It is undisputed that serious

---

public housing project's no-trespass policy prevented him from leafletting on public housing property. Thompson makes no claim that he was seeking to engage in protected First Amendment activity when he entered onto KCDC property. On appeal, Thompson argues only the Fourteenth Amendment claim.