JUSTICE KINSER, with whom JUSTICE LEMONS joins,
concurring in part and dissenting in part.
Today, the majority holds that the trespass policy of the Richmond Redevelopment and Housing Authority (the Authority) is “overly broad and . . . infringes upon First Amendment protections” because the Authority’s housing manager, according to the majority, has “unfettered discretion” to determine whether an individual is authorized to be on the Authority’s property. The majority reaches this issue by allowing the defendant to make a facial challenge to the Authority’s trespass policy. I do not believe that such a challenge is permissible in this case.
A facial challenge to a statute, or in this case, to the trespass policy, can proceed under two different doctrines. “First, the over-breadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when ‘judged in relation to the statute’s plainly legitimate sweep.’ ” City of Chicago v. Morales, 527 U.S. 41, 52 (1999) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973)). Under the second doctrine, even if a statute is not over-broad (i.e., it “does not reach a substantial amount of constitutionally protected conduct”), “it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests.” Id. (citing Kolender v. Lawson, 461 U.S. 352, 358 (1983)).
The majority utilizes the overbreadth doctrine to find the trespass policy unconstitutional on its face. Explaining the defendant’s standing, the majority states that, “in the context of a First Amendment challenge, a litigant may challenge government action granting government officials standardless discretion even if that government action as applied to the litigant is constitutionally permissible.” The majority intertwines its examination of the standing issue and its substantive analysis of the trespass policy, and in doing so, uses its view that the trespass policy grants unfettered discretion to the housing manager to decide who can come onto the Authority’s property to support its conclusion that the defendant has standing to make a facial challenge. In other words, the majority does not separate the question of standing from its substantive First Amendment ruling.
*62 To support this finding of unfettered discretion and thus standing, the majority relies upon a line of cases involving prior restraints upon the exercise of First Amendment rights. Each of the cases cited by the majority addressed a statute requiring a license or permit to engage in First Amendment activity. See, e.g., City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 769 (1988) (invalidating ordinance requiring publishers to obtain permit from mayor for placing newsracks on sidewalk); Shuttlesworth v. City of Birmingham, 394 U.S. 147, 153 (1969) (invalidating ordinance requiring marchers to seek permission from city commission); Staub v. City of Baxley, 355 U.S. 313, 321 (1958) (invalidating ordinance requiring labor unions to seek permit from mayor and city council for solicitation of members); Kunz v. New York, 340 U.S. 290, 293-94 (1951) (invalidating ordinance prohibiting public worship without permit from police commissioner); Saia v. New York, 334 U.S. 558, 560-61 (1948) (invalidating ordinance that required operators of loudspeakers and amplifiers to obtain permission from police chief); Schneider v. State, 308 U.S. 147, 162-64 (1939) (invalidating ordinance that banned distribution of literature without written permit from chief of police); Lovell v. City of Griffin, 303 U.S. 444, 450-51 (1938) (invalidating ordinance prohibiting distribution of literature without first obtaining written permission from city manager).
Because the Authority’s trespass policy does not directly regulate activity protected by the First Amendment, but instead limits access to government property, I conclude that these cases are not persuasive authority to justify the defendant’s facial challenge to the trespass policy. In using these cases, the majority also assumes that the trespass policy regulates pure speech instead of conduct. This approach allows a facial challenge in this case without directly addressing the admonition of the Supreme Court of the United States that “overbreadth scrutiny has been limited with respect to conduct-related regulation.” New York v. Ferber, 458 U.S. 747, 766 (1982) (citing Broadrick, 413 U.S. 601).
“The traditional rule is that a person to whom a [policy] may constitutionally be applied may not challenge that [policy] on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court.” Id. at 767 (citing Broadrick, 413 U.S. at 610). One exception to this principle is in the arena of First Amendment overbreadth. Id. at 768. However, “[b]ecause of the wide-reaching effects of striking down a statute[, or trespass policy as in this case,] on its face at the request of one *63 whose own conduct may be punished despite the First Amendment,” the First Amendment overbreadth doctrine has been recognized as “strong medicine” and is employed “with hesitation, and then ‘only as a last resort.’ ” Id. at 769 (quoting Broadrick, 413 U.S. at 613). As explained in Broadrick:
facial overbreadth adjudication is an exception to [the] traditional rules of practice and ... its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from ‘pure speech’ toward conduct and that conduct - even if expressive - falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.
413 U.S. at 615. Thus, the Court has held that “where conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute’s plainly legitimate sweep.” Ferber, 458 U.S. at 770 (quotation marks omitted).
The Authority’s trespass policy is found in the “Authorization” given to the Richmond Police Department to enforce the trespass laws of the Commonwealth of Virginia upon the Authority’s public housing property. An individual may be banned from the Authority’s property if that individual “is not a resident, employee, or such person cannot demonstrate a legitimate business or social purpose for being on the premises.” After receiving either written or oral notice that he or she cannot return to the Authority’s property, that person may then be arrested for trespass if he or she “either stays upon or returns” to the Authority’s property.
By its terms, this policy is directed at conduct, namely trespassing, and not pure speech. Cf. Cox v. Louisiana, 379 U.S. 559, 581 (1965) (Black, J., concurring in part and dissenting in part) (“Standing, patrolling, or marching back and forth on streets is conduct, not speech, and as conduct can be regulated or prohibited.”); Local 391 v. City of Rocky Mount, 672 F.2d 376, 379 (4th Cir. 1982) (picketing is a hybrid of speech and conduct). The policy is not aimed at censoring particular groups or viewpoints, or prohibiting individuals from distributing leaflets on the property. Nor is it intended to prevent individuals from associating with friends or family who live in Whitcomb Court. Instead, it seeks to regulate the criminal act of tres *64 passing that violates Code § 18.2-119. In other words, the policy’s legitimate sweep prohibits trespassing, an activity that is not protected by the First Amendment.
Because the trespass policy regulates conduct and not pure speech, I conclude that it must be “substantially overbroad” before it can be attacked through a facial challenge, and that whatever over-breadth may exist in the policy does not meet the threshold of “substantial overbreadth.” “The concept of ‘substantial overbreadth’ is not readily reduced to an exact definition^ but] ... the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.” Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984). Instead, this is “the paradigmatic case of a [policy] whose legitimate reach dwarfs its arguably impermissible applications.” Ferber, 458 U.S. at 773. “[W]hatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.” Broadrick, 413 U.S. at 615-16. Thus, I find that the defendant does not have standing to assert a facial challenge to the Authority’s trespass policy under the “overbreadth doctrine.”
Nor do I believe that the defendant can make a facial challenge to the trespass policy under the “vagueness” doctrine. “A [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant’s conduct before analyzing other hypothetical applications of the law.” Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982); accord Parker v. Levy, 417 U.S. 733, 756 (1974); but see Morales, 527 U.S. at 55. The defendant’s conduct when he was arrested for trespass clearly violated both the trespass policy and Code § 18.2-119. He had been previously banned from Whitcomb Court and had been given written notice that he was not to trespass on the Authority’s property. Nevertheless, he entered upon the property on the day in question. There can be no question that this conduct was clearly proscribed.
Thus, I conclude that the defendant may only challenge the trespass policy as it was applied to him. Before turning to that issue, I am compelled to point out that, if a facial challenge is to be allowed in this case, it should be analyzed under the framework established by the Supreme Court for deciding when an individual’s First Amendment rights have been violated by a denial of access to gov *65 emment property. See United States v. Kokinda, 497 U.S. 720, 726-27 (1990).
“[T]he [U.S. Supreme] Court has adopted a forum analysis as a means of determining when the Government’s interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes.” Cornelius v. NAACP Legal Defense & Ed. Fund, 473 U.S. 788, 800 (1985). The first inquiry in this analysis is whether the particular activity at issue is speech protected by the First Amendment. Id. at 797. If it is, the nature of the forum must then be identified, “because the extent to which the Government may limit access depends on whether the forum is public or nonpublic.” Id. “[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government.” United States Postal Service v. Council of Greenburgh Civic Ass’ns, 453 U.S. 114, 129 (1981). The final inquiry is whether the “justifications for exclusion from the relevant forum satisfy the requisite standard.” Cornelius, 473 U.S. at 797. The defendant agrees that this analytical framework applies in this case, as reflected by his statement on brief that, “[i]n determining whether [the Authority’s trespass policy] is permissible, this Court must first define the areas affected by the regulation.”
Returning to the issue regarding the constitutionality of the trespass policy as applied to the defendant, I find that the only constitutional right that the defendant could have been asserting when he entered upon the Authority’s property for the purpose of bringing diapers to his son was his right of association under the Fourteenth Amendment. See Board of Dirs. of Rotary Int’l v. Rotary Club of Duarte, 481 U.S. 537, 544 (1987) (constitutional protection afforded to freedom of association in two distinct areas: freedom to enter into and maintain certain intimate or private relationships, and freedom to associate for purpose of engaging in protected speech or religious activities). Although the defendant argues that his conviction for trespassing violated his First Amendment rights of speech and association, and his Fourteenth Amendment right of intimate association, he was not engaged in speech or expressive association on the day in question. Thus, I conclude that the defendant’s claim must be analyzed under the Fourteenth Amendment rather than the First Amendment. See Thompson v. Ashe, 250 F.3d 399, 406-07 (6th Cir. 2001). Consequently, it is not necessary to engage in a forum analysis, as the Court of Appeals did. As I previously explained, the first step in that analysis is whether the particular activity at issue is speech pro *66 tected by the First Amendment. Cornelius, 473 U.S. at 797. When it is not, as in this case, then it is not necessary to determine the nature of the forum.
In determining whether the Authority’s trespass policy impermissibly infringes upon the defendant’s freedom of association under the Fourteenth Amendment, it is necessary to decide first whether the defendant’s asserted purpose for being on the Authority’s property, i.e., to take diapers to his child, involved the exercise of a fundamental right. The Supreme Court has recognized a fundamental right of privacy that includes the freedom to enter into and maintain certain intimate relationships. See, e.g., Zablocki v. Redhail, 434 U.S. 374, 383-86 (1978) (constitutional protection of marriage); Carey v. Population Servs. Int’l, 431 U.S. 678, 684-85 (1977) (right to choose whether to bear children); Moore v. City of East Cleveland, 431 U.S. 494, 506 (1977) (right to cohabitate with certain family members); Pierce v. Society of Sisters, 268 U.S. 510, 534-35 (1925) (parents’ right to send children to private school); Meyer v. Nebraska, 262 U.S. 390, 399-400 (1923) (parents’ right to have children instructed in foreign language). However, the Court has not characterized the provision of diapers or visitation with family members as the exercise of fundamental rights. See Thompson, 250 F.3d at 407. Therefore, the trespass policy as applied to the defendant must be judged under the rational basis test. See Vacco v. Quill, 521 U.S. 793, 799 (1997) (when legislation does not burden a fundamental right, it will be upheld “so long as it bears a rational relation to some legitimate end”). Under that standard of review, the trespass policy need only be rationally related to a legitimate governmental purpose, and the Court cannot “sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations.” Heller v. Doe, 509 U.S. 312, 319 (1993) (quoting City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976) (per curiam)).
I conclude that the Authority’s trespass policy passes constitutional muster under this test. The undisputed purpose of the policy is to create a safe, drug-free environment for the residents of Whitcomb Court. It cannot be questioned, in my view, that the prevention of crime in public housing is a legitimate governmental goal. See Department of Hous. & Urban Dev. v. Rucker, _U.S. _, 122 S.Ct. 1230, 1232 (2002) (recognizing “reign of terror” imposed by criminal activity in public housing). The policy of banning individuals who are not residents or employees of the Authority, or who cannot demonstrate a legitimate business or social purpose for coming *67 onto the premises, is rationally related to, and advances, the legitimate governmental goal of preventing crime in public housing. Charging individuals with trespass when they enter upon the Authority’s property after having been banned, as in the case of the defendant, also advances that goal. It must be remembered that the defendant is challenging his conviction for trespass in this appeal, not his barment from the Authority’s property.
Based on the record in this case and for the stated reasons, I conclude that the defendant’s arrest and conviction for trespassing did not violate his right of association afforded under the Fourteenth Amendment. Accordingly, I would reverse the judgment of the Court of Appeals and reinstate the defendant’s conviction.*
Because I agree with section 111(A) of the majority opinion, I respectfully concur in part and dissent in part.

 On brief, the defendant asserts a freedom to “loiter” based on a statement in a portion of Morales in which three justices joined, 527 U.S. at 53. He did not raise this specific argument before the trial court and is, therefore, precluded from doing so on appeal. See Rule 5:25.