# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1876

_____

| | | |
|---|---|---|
| Lois J. Royer, as personal representative of the estate of Kenneth Royer, | * * * * | |
| Plaintiff - Appellant, | * * | |
| v. | * * | Appeal from the United States District Court for the |
| City of Oak Grove; David Frasher; Shirley Helen Johnson; James Bradley Alexander; Roger Michael Johnston, | * * * * | Western District of Missouri. |
| Defendants - Appellees. | * * | |
| Frank B.W. McCollum, | * * | |
| Defendant. | * | |

_____

Submitted: February 9, 2004
Filed: July 9, 2004

_____

Before LOKEN, Chief Judge, BOWMAN and WOLLMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

This case concerns a lawsuit filed by Kenneth Royer[1] against the City of Oak Grove, Missouri (City), three current or former aldermen, the former City Administrator, the former mayor, and a private attorney retained by the City. Royer's suit follows in the wake of several suits filed against Royer (by the City and/or non-profit foundations he formerly headed) and a separate suit filed against Royer by the City after Adrianna Hall, a City employee, accused him of sexual harassment. Royer brought this suit alleging that the City's suit against him, its conduct following the allegations of sexual harassment, and its limited ban on his presence in a city building violated 42 U.S.C. § 1983 (2000) by interfering with his First Amendment freedom of association rights, his Fourteenth Amendment due process rights, and his free access to the courts. Royer also alleged various state-law violations. Originally filed in state court, the defendants removed the action to federal court and eventually moved for summary judgment. The District Court[2] granted summary judgment to all the defendants on the § 1983 claims and remanded Royer's state-law claims to the state court from which they had been removed. We affirm.

Kenneth Royer was the president of three related not-for-profit organizations located in Oak Grove, Missouri. The first of these organizations, the Oak Grove Development Foundation, Inc. (OGDF), is a non-profit corporation established for the City's benefit in the early 1980's to serve as a vehicle for financing new public buildings, including the Davis Memorial Center. Oak Grove Senior Citizens, Inc. (OGSC), is a non-profit corporation that provides services for senior citizens in Oak Grove, including a daily lunch service at the Davis Memorial Center. Finally, Davis Memorial Center, Inc. (DMCI), operated the Davis Memorial Center where Adrianna Hall worked in the meals program run by OGSC. The relationship between these

---

[1]Kenneth Royer died after this suit was filed and his wife, Lois J. Royer, as the representative of his estate, has been substituted as the plaintiff.

[2]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

-2-

foundations and the City deteriorated and eventually gave rise to several of the suits already mentioned. In response to a petition and pursuant to state law, the State Auditor of Missouri, Claire McCaskill, performed an audit of the City and at least one of the not-for-profit organizations, OGDF. See Mo. Rev. Stat. § 29.230 (2000); State Auditor of Missouri, Audit Report of City of Oak Grove, Missouri (Feb. 28, 2002). The Auditor's report reveals several things germane to this suit. As with other buildings that OGDF financed, the foundation retained ownership of the Davis Memorial Center, and it entered into a lease agreement with the City that gave the City exclusive control over the building. The report also noted that OGDF entered into a second lease agreement that also gave DMCI exclusive control over the newly-built Center. Audit Report at 9. In addition, the report explains that DMCI has existing long-term leases with at least one other entity that permit that entity to use a portion of the building. Id. During the summer of 1999, the City took preliminary steps to investigate the conduct of these three non-profit entities and to (re)assert control over them and to ensure their proper functioning. Shortly thereafter, Adrianna Hall, who worked at the Davis Memorial Center in the lunch program run by OGSC, accused Royer of sexually harassing her. Hall draws her salary and benefits from the City, but her salary is at least partly reimbursed by the foundations, which may have some authority over her working conditions.

In reponse to Hall's charges, the City ordered Royer to stay away from Hall, and later banned him from the Davis Memorial Center during her working hours. The City also asked Frank McCollum, an attorney who was also handling the City's investigation of the foundations, to advise them on Hall's claim. Over the course of the next month, the City investigated Hall's claim and determined that it had merit. Thereafter, the City felt compelled to sue Royer and sought an injunction that would prevent him from entering the building on a permanent basis. This state-court suit was dismissed because it had not been properly authorized by the City's board of aldermen. See Mo. Rev. Stat. § 79.130. The present federal lawsuit, brought by Royer, followed.

When we consider a district court's grant of summary judgment, we review any findings of fact for clear error and conclusions of law de novo. Gen. Trading Int'l, Inc. v. Wal-Mart Stores, Inc., 320 F.3d 831, 835 (8th Cir. 2003).[3] Royer's two main issues on appeal, the freedom of association and due process claims, are considered in turn.

Royer contends that the District Court erred when it granted summary judgment to the City on his freedom of association claim. The Supreme Court has explained that analysis of a freedom of association claim involves a two-part inquiry. First, if the plaintiff has identified an associational right that is impacted by the state action, the Court inquires whether the burden on that right is "significant." Boy Scouts of Am. v. Dale, 530 U.S. 640, 656 (2000) (finding "that the forced inclusion of Dale would significantly affect" the Boy Scouts' expressive association); see also Roberts v. United States Jaycees, 468 U.S. 609, 626 (1984) ("Indeed, the Jaycees has failed to demonstrate that the Act imposes any serious burdens on the male members' freedom of expressive association."); Carter v. Nixon, 72 F.3d 633, 636 (8th Cir. 1995), cert. denied, 518 U.S. 1033 (1996). If the burden is found to be a significant burden on associational rights, the court must then consider whether a compelling state interest justifies the governmental practice. Dale, 530 U.S. at 648 (noting that the governmental entity must have a "'compelling state interest[], unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms,'" quoting Roberts, 468 U.S. at 623). Ultimately, we must balance these competing interests, and the Court has explained that "the associational interest in freedom of expression has been set on one side of the scale,

---

[3]With unnecessary hyperbole, Royer urges that the District Court erred when it granted summary judgment because there were material facts still in dispute. We agree that there are many still-unresolved facts in this case, but these facts are not material. Royer also claims that the District Court erred when it sua sponte granted summary judgment to the defendants. Our review of the record does not support this claim.

and the State's interest on the other." Id. at 658–59. With this standard in mind, we turn to Royer's claim.

We must first identify the associational right that has allegedly been burdened by the City's action, for only if an associational right exists will we ask whether the government practice imposes a significant burden. The Supreme Court has consistently recognized two types of protected associational rights: the right "to enter into and maintain certain intimate human relationships" and the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." Roberts, 468 U.S. at 617–18. Royer's allegations clearly fall into the latter category. Specifically, Royer urges that his First Amendment freedom of association rights have been burdened because the City's partial ban on his presence at the Davis Memorial Center limited his ability to carry out his duties as head of several local non-profit organizations and also limited his ability to meet with other citizens and foundation members to discuss politics and to discuss the City's investigation of the foundations. We assume, without deciding, that Royer has sufficiently alleged the existence of protected associational rights. We must now ask whether these rights have been significantly burdened.

We think it self-evident that Royer's rights have not been significantly burdened. In this case, the extent of the burden on Royer's associational rights is that the City issued a narrowly drawn order that prohibited him from entering a public building while the individual he was alleged to have harassed was present. In no other way has the City taken steps to prevent Royer from associating with (or not associating with) whomever he wants, wherever he wants, whenever he wants. This case then is unlike those cases in which a state actor has imposed substantial burdens on an individual's or a group's associational rights by, for example, compelling individuals to associate with one another, Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557 (1995), or taking actions that would severely

chill a group's activities, <u>NAACP v. Alabama</u>, 357 U.S. 449 (1958).[4]  Having found no significant burden on Royer's First Amendment associational rights, we have no occasion to consider whether the City has advanced a "compelling state interest" in the ban it instituted.[5]  Accordingly, the District Court did not err when it granted summary judgment to the defendants on this issue.

Royer also argues that the District Court erred when it granted summary judgment to the City on his due process claim.  Specifically, he claims the decision of the District Court is internally inconsistent because on the one hand, it recognized that the ban impacted Royer's associational rights to some degree and, on the other hand, concluded that the City's actions complied with due process.  We see no inconsistency and affirm.

To implicate the Due Process Clause of the Fourteenth Amendment, Royer must show that he has a property or liberty interest that has been affected by the government action.  <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972); <u>City of Pierre v. FAA</u>, 150 F.3d 837, 842 (8th Cir. 1998).  Like the District Court, we agree that Royer can point to no property interest in having unlimited access to a public

_____

[4]With respect to the freedom of association and due process claims, it might be a different matter if the state actor banned individuals from meeting at a certain location in which they had a leasehold (or other property) interest, but this is not the claim that Royer has made.

[5]If we were to consider whether the City of Oak Grove had a compelling state interest in this limited ban, we would note that under applicable federal law, an employer must take a sexual harassment complaint seriously for if it fails to act appropriately, it may face liability even where the harasser was a customer or unrelated third party.  <u>See</u> 29 C.F.R. § 1604.11(e) (2003) ("An employer may also be responsible for the acts of non-employees . . . where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action.");  <u>cf.</u> <u>Murray v. New York Univ. Coll. of Dentistry</u>, 57 F.3d 243, 250 (2d Cir. 1995).

building. Consequently, the only constitutionally protected interest in play is Royer's right to freedom of association. <u>See</u> <u>Thompson v. Ashe</u>, 250 F.3d 399, 407–408 (6th Cir. 2001) (concluding that, as to individual banned from visiting public-housing campus, "[a]t best . . . [plaintiff's] claim that he has been denied procedural due process hinges on his interest in associating with his family and friends . . . which, as we have already seen, is not a fundamental liberty interest"). As we have already noted, Royer's associational rights were not significantly affected; rather, the impact on his rights was minimal at best. Consequently, we cannot say that any due process protection was required. <u>Matthews v. Eldridge</u>, 424 U.S. 319, 335 (1975) (setting forth three-part test and noting "due process is flexible and calls for such procedural protection as the particular situation demands." <u>Id.</u> at 334 (quoting <u>Morrisey v. Brewer</u>, 408 U.S. 471, 481 (1972)); <u>Thompson</u>, 250 F.3d at 408. Moreover, even if we were to find that Royer was entitled to some procedural due process before the City instituted its limited ban, we would affirm the District Court's grant of summary judgment on this claim because the record presented to us reveals that the basic requirements of the Due Process Clause ("notice and opportunity for hearing appropriate to the nature of the case") were fulfilled in this case. <u>See</u> <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 333 (1949).

Here, the allegation of sexual harassment was made by Hall on September 3, 1999, and an investigation was launched. Hall was then interviewed by phone by the City's attorney on or about September 8. The City notified Royer and OGSC of the investigation on September 10 and, in the same letter, asked Royer "to not be in Ms. Hall's presence while she is at the Center." Hall was interviewed again on September 13 by the City's attorney and the City Administrator. Roy Meier (who served as city collector and as a board member of OGSC and OGDF) was also present for at least part of this meeting and was assigned to investigate the matter further. The next day, Meier met with Royer and the board of OGSC to discuss this and other matters. On September 24, Royer and the board of OGSC met with the City Administrator and the board asked that Hall be transferred, a request they put in

writing the next day. During this meeting, Royer did not contest the allegations but did explain that he felt Hall's performance was deficient because "she's bull-headed." Depo. of Kenneth Royer at 72 (March 21, 2001). The City determined that Ms. Hall's complaint had merit during the Board of Alderman's October 4 meeting and filed suit against Royer on October 18. Simply put, Royer had notice of the allegations, met with the City Administrator once and met with the person assigned to investigate the charges (Meier) twice. Royer was afforded ample time and opportunity to contest the charges and chose not to. Cf. Gentry v. City of Lee's Summit, 10 F.3d 1340, 1345 (8th Cir. 1993) (noting that, where City sought to invoke right to retake possession of leasehold interest, pre-deprivation exchange of letters might fulfill due process requirement). The District Court did not err when it granted summary judgment on this claim.[6]

For the foregoing reasons, the decision of the District Court granting summary judgment to the defendants is affirmed.

_____

[6]We pause here to note that counsel for the appellant goes "far beyond the pale of reasonable advocacy," Davidson & Schaaff, Inc. v. Liberty National Fire Insurance Co., 69 F.3d 868, 872 (8th Cir. 1995), when it urges that the District Court's order "castrates" Royer's due process rights. Appellant's Br. at 23. Nor does counsel uphold the highest standards of advocacy when it characterizes the District Court's order as being excessively bold or even rash. Id. ("the District Court has the temerity to rule . . ."). As we have made clear, the District Court's order was correct on the merits and is in no way an adventuresome departure from established law.