## A08A1975. RAY v. GEORGIA DEPARTMENT OF NATURAL RESOURCES et al.

(675 SE2d 585)

SMITH, Presiding Judge.

After the tragic drownings of her eight-year-old son and a five-year-old foster son at Tallulah Gorge, L. Stephanie Ray brought this wrongful death action against the Georgia Department of Natural Resources ("the Department") and Georgia Power Company.[1] The trial court granted summary judgment in favor of both defendants on the basis of the Recreational Property Act, OCGA § 51-3-20 et seq. ("the Act"). Because the trial court correctly found that the immunity provisions of the Act apply in these circumstances, we affirm.

> Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. On appeal from a grant of summary judgment, we conduct a de novo review of the evidence, and construe the evidence in favor of the nonmoving party.

(Citations, punctuation and footnotes omitted.) *Collins v. City of Summerville,* 284 Ga. App. 54 (643 SE2d 305) (2007).

So viewed, the evidence shows that Tallulah Gorge State Park is part of the Georgia State Park System and is managed by the Department. Georgia Power Company leased the property to the Department and owns and operates Tallulah Falls Dam.

Ray, an adult friend, her son, and three foster children travelled to the park to walk and view the scenery. They arrived late in the day, and the Interpretive Center had just closed. A park ranger reopened the center to get a map for them, and informed them that they could access the trails and that the park was open until dusk. The ranger gave Ray's adult friend information about the trails and stairwells, told them to enjoy themselves, and left. Ray and her companions

---

[1] The claims on behalf of the foster child were brought in a separate action.

walked down a trail and stairway to a landing, from which they saw other people walking on the rocks below with their children. Ray's adult companion went down several additional stairs and out onto the rocks, and Ray's son and another of the children followed him. The two children returned to the landing and asked Ray if they could put their feet in the water, and she told them they could not. When she left them to walk out onto the rocks herself, they were on the landing, and she did not see how they got into the water. She heard a splash, and her 15-year-old foster child screamed, "They fell in." Tragically, both boys were swept away and drowned, despite Ray's desperate efforts to rescue them.

1. The stated purpose of the Recreational Property Act "is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting the owners' liability toward persons entering thereon for recreational purposes." OCGA § 51-3-20.

> In order to achieve this purpose, the Act specifies that an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes may not be held liable for personal injuries resulting from unsafe or defective conditions existing on the premises, unless such injuries resulted from willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(Citations and punctuation omitted.) *South Gwinnett Athletic Assn. v. Nash*, 220 Ga. App. 116, 117 (1) (469 SE2d 276) (1996); see OCGA §§ 51-3-23; 51-3-25 (1).

Ray contends that the evidence created a jury issue as to whether the Tallulah River and gorge were open to the public. She bases this contention on testimony that the Department issued 100 permits on a first-come, first-served basis for access to the "gorge floor," but that on days when an "aesthetic release" of water from the upstream dam occurred, as on the day Ray and her companions visited, no permits are issued. But we have held in *Lee v. Dept. of Natural Resources*, 263 Ga. App. 491, 493 (2) (588 SE2d 260) (2003), that land remains "available to the public" within the meaning of the Act although the Department restricts admission on the basis of a lottery.

While Ray contends a dispute exists regarding what constitutes the "gorge floor" and the precise areas covered by the permitting process, that dispute is not material here. The evidence indicates that Ray and her companions were "directly invite[d]" to enter the gorge by a park ranger, who provided them with maps and instruc-

YALE LAW LIBRARY

tions regarding the stairways to access the gorge and told them the park was open until dusk. Moreover, it is undisputed that the trails, stairs and landings, including the landing where the two children were last seen, remained open to the public at all times and required no permit. Ray herself acknowledges that "[s]taircases and other walkways are invitations to 'walk here.' " And the provision of an "aesthetic release" at the very least indicates that appellees released water through the gorge for the viewing and enjoyment of the public. Ray has not demonstrated a disputed material issue of fact on this point.

These facts also distinguish *Ga. Power Co. v. McGruder*, 229 Ga. 811 (194 SE2d 440) (1972), cited by Ray. In that case, a boy drowned in a drainage pipe below a dam and power plant. Large warning signs were posted reading: " 'Danger. For your own safety please keep out. Rough waters. Gates at dam operate automatically.' " Id. at 811-812. No evidence was presented that any area near the power plant, dam, or pool was maintained by the owner as a park or recreational area to which the public was directly or indirectly invited. The Supreme Court held that the Act was inapplicable when "use of the land was expressly denied to the deceased boy by the posting of 'keep out' signs in the area." Id. at 812. In direct contrast, here a public park was maintained to which the public was invited, in Ray's case directly so by a park ranger. This enumeration of error is without merit.

2. Ray next contends that the Act does not apply because appellees willfully or maliciously failed to guard or warn against the dangerous condition of the gorge. The Georgia courts have developed a four-part test to determine whether a property owner falls within this exception:

> A wilful failure to guard or warn would require actual knowledge of the owner that its property is being used for recreational purposes; that a condition exists involving an unreasonable risk of death or serious bodily harm; that the condition is not apparent to those using the property; and that having this knowledge, the owner chooses not to guard or warn, in disregard of the possible consequences. This test excludes either constructive knowledge or a duty to inspect.

(Punctuation omitted.) *Ga. Marble Co. v. Warren,* 183 Ga. App. 866, 867 (1) (360 SE2d 286) (1987). The trial court correctly found that the third prong of this test was not met, because no evidence was presented that appellees had actual knowledge of a condition that was not apparent to persons using the property.

As the trial court observed, "[a] large body of rapidly moving

water constitutes a clear and obvious condition."

> [A] large body of rapidly moving water constitutes a clear and obvious dangerous condition, and the danger of drowning in water is a palpable and manifest peril, the knowledge of which is chargeable to the decedent[s] in the absence of a showing of want of ordinary capacity.

(Citation and punctuation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. 664, 666 (1) (595 SE2d 353) (2004) (swiftly-moving river below power company dam).

Ray herself acknowledged during her deposition that she observed the river and that she saw it was "white water," and that if the boys got into the water "it would be a life-threatening situation." "The fear of water and of drowning is instinctively present in young children as a matter of law. [Cit.]" Id. The condition of the river at the time of the incident was "apparent to those using the property." Therefore, Ray has failed to show the third element of the four-prong test and cannot rely upon this exception to the Act.

The evidence, as a matter of law, shows an absence of wilful failure to guard or warn on the part of appellees. The Act therefore applies, and appellees are entitled to summary judgment. *Ga. Marble Co.*, supra, 183 Ga. App. at 867-868 (1). These tragic drownings evoke the strongest feelings of sympathy, but these circumstances do not create a cause of action against the defendants. *White v. Ga. Power Co.*, 265 Ga. App. 664, 667 (1) (595 SE2d 353) (2004).

3. Finally, Ray contends that this case must be reversed because the trial court allegedly failed to consider the depositions in the record. But "we will not reverse a grant of summary judgment solely on this ground. Instead, we will examine the depositions and decide whether the evidence contained in them creates a material issue of fact." *Stanford v. Paul W. Heard & Co.*, 240 Ga. App. 869, 870 (1) (b) (525 SE2d 419) (1999). Moreover, "[e]ven if the trial court failed to consider all of the depositions, [a]ppellant does not point to any evidence in the depositions which creates an issue of fact." *Harbin v. Harbin*, 261 Ga. App. 244, 246 (2) (582 SE2d 131) (2003). Ray has not cited to any specific evidence in the depositions showing a genuine issue of material fact, and "it is not the function of this court to cull the record on behalf of a party. This court cannot read every line of the record and transcript to hunt for error. Accordingly, this enumeration of error is without merit." *Stanford*, supra at 870 (1) (b).

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED MARCH 18, 2009.

*Kaplan & Seifter, Brad C. Kaplan, James I. Seifter*, for appellant.

*Thurbert E. Baker, Attorney General, G. Michael Banick, Assistant Attorney General, Blasingame, Burch, Garrard & Ashley, M. Steven Heath, Matthew A. Moseley*, for appellees.