**FIFTH DIVISION
MCFADDEN, P. J.,
GOBEIL and PINSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 24, 2022

# In the Court of Appeals of Georgia

A22A0496. TROTTER v. TUCKER FOOTBALL LEAGUE, INC.

McFADDEN, Presiding Judge.

Yohan Trotter, a coach with the Tucker Football League, Inc., was injured in a fight following a youth football game at the league's field. Trotter sued the league for damages, arguing that the league was negligent in failing to take required safety measures at the field. The trial court granted summary judgment to the league on the ground that the league was immune from suit under the Recreational Property Act, OCGA § 51-3-20 et seq., and Trotter appeals. He argues that the Act's immunity does not apply here because the league wilfully failed to warn him of or guard against a dangerous condition at the field. But he has not pointed to evidence demonstrating all of the facts required to invoke that exception to the Act. So we affirm.

1. *Facts and procedural history.*

"[T]o prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law[.]" *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted). See OCGA § 9-11-56 (c). A defendant, which does not bear the burden of proof at trial,

> may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. . . . Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Cowart*, 287 Ga. at 623 (1) (a) (citations and punctuation omitted). We review the trial court's ruling on summary judgment de novo, viewing "the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." Id. at 624 (1) (a) (citation and punctuation omitted).

So viewed, the evidence shows that Trotter was a volunteer coach for the league, a nonprofit organization that operated a youth football and cheerleading program. On September 9, 2017, Trotter's under-12 team was playing a game at its home field. The league owned the property on which the field sat and it had not

2

charged an admission fee for the game, which was open to the public. At the end of the game, an adult spectator approached Trotter on the field and, after the two exchanged words, the spectator physically assaulted Trotter. A child was also hit during the altercation.

The league was a member of the larger Youth Football Association (YFA) and was subject to that association's policies and procedures. One of those policies required that the league "provide a police presence on home game days to keep unruly spectators in line." But at the time of the incident the league did not regularly provide police presence (or other hired security) at its home games, including the game at which Trotter was assaulted. The league also did not comply with a YFA policy requiring a fence or safety barrier that separated the field from the spectator section and was at least 15 yards from the out-of-bounds lines on the field. Instead, the field had a fence that was less than this prescribed distance, although the league asserted that the YFA had permitted this deviation. In addition, spectators and league officials sometimes consumed alcohol at games, despite a YFA policy forbidding drinking at its events. Indeed, on the day of the incident, the league representative with oversight responsibility at the field — a member of the league's board — had consumed alcohol earlier in the day. In addition, on a handful of earlier occasions, physical altercations

had broken out among adults at the field, and there was also one incident in which a spectator was believed to have a gun.

In his complaint, Trotter alleged that the league was negligent in failing to provide a safe environment at the field, including failing to provide police presence at the game and failing to have a fence or safety barrier that was at least 15 yards from the field. The league moved for summary judgment, arguing that it was immune from suit under the Recreational Property Act. Opposing the motion, Trotter argued among other things that the Act's immunity did not shield the league in this case because there was evidence showing that the league had wilfully failed to guard or warn against a dangerous condition. The trial court granted the league's motion and Trotter appeals.

2. *Analysis.*

"The Recreational Property Act shields from liability a property owner 'who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes(.)' OCGA § 51-3-23." *Mercer Univ. v. Stofer*, 306 Ga. 191 (830 SE2d 169) (2019). But "[n]othing in [the Act] limits in any way any liability which otherwise exists . . . [f]or willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity[.]" OCGA § 51-3-25 (1).

4

"'[W]illful failure' involves a conscious, knowing, voluntary, intentional failure, rather than a mere inadvertent, accidental, involuntary, inattentive, inert, or passive omission." *Stone Mountain Mem. Assn. v. Amestoy*, 337 Ga. App. 467, 469-470 (788 SE2d 110) (2016) (citations and punctuation omitted). A plaintiff such as Trotter who seeks to invoke OCGA § 51-3-25 (1)'s wilful failure exception

> must show that the property owner . . . had *actual knowledge* that (1) the property was being used for recreational purposes; (2) a condition existed involving unreasonable risk of death or serious bodily harm; (3) the condition was not apparent to those using the property; and (4) having the foregoing knowledge, the property owner chose not to warn users in disregard of the possible consequences. Constructive knowledge is insufficient to meet this burden of proof[.] Importantly, the plaintiff must satisfy *each prong* of this four-part test to succeed against a recreational property owner under this exception.

*Stone Mountain Mem. Assn.*, 337 Ga. App. at 470 (citations omitted; emphasis in original). See also *Ray v. Ga. Dept. of Natural Resources*, 296 Ga. App. 700, 702 (2) (675 SE2d 585) (2009) (discussing the "four-part test to determine whether a property owner falls within [the wilful or malicious] exception" to the Recreational Property Act).

5

On appeal, the parties appear to agree that the league's field was used for recreational purposes, the first prong of the four-part test. See *Shields v. RDM*, 355 Ga. App. 409, 415-416 (2) (844 SE2d 297) (2020) (holding that a free exhibition of cheerleading routines was "recreational" within the meaning of the Act ). Instead, this appeal turns on whether there exist genuine issues of material fact regarding the other prongs of the test. If there is not a genuine issue of material fact as to each of those prongs, then the league is entitled to summary judgment under the Act. See *Lee v. Dept. of Natural Resources*, 263 Ga. App. 491, 494 (3) (588 SE2d 260) (2003) (finding that the defendant's wilful failure to warn of a dangerous condition was not established as a matter of law, and so the defendant was entitled to summary judgment, where the plaintiff did not point to evidence creating a genuine issue of material fact as to one of the four prongs of the test establishing an exemption to immunity under the Recreational Property Act).

In his appellate briefs, Trotter characterizes the allegedly dangerous condition at the field in various ways: the presence of unruly spectators at the field; the lack of police presence at the field; and the consumption of alcohol by the board member responsible for overseeing the game. It is not apparent that Trotter intends to argue that each of these is a separate, dangerous condition. But even if we view them as

6

such, we find no merit in Trotter's arguments because, as to each of these conditions, he has failed to point to evidence creating a genuine issue of material fact about at least one of the remaining prongs in the above-described test.

(a) *Unruly spectators.*

As to unruly spectators, Trotter "failed to produce any evidence to create a jury question as to the third prong of the test — that is, that [the league] had *actual knowledge* that [the allegedly dangerous condition caused by unruly spectators was] not apparent to those using the property." *Stone Mountain Mem. Assn.*, 337 Ga. App. at 471 (emphasis in original). See also *South Gwinnett Athletic Assn. v. Nash*, 220 Ga. App. 116, 119 (1) (469 SE2d 276) (1996). We have held this requirement to mean that the property owner must know that the dangerous condition is not open and obvious, which "depends on the objective knowledge of a reasonable person, not on the plaintiff's subjective knowledge." *Stone Mountain Mem. Assn.*, 337 Ga. App. at 473. See also *Gayle v. Frank Callen Boys & Girls Club*, 322 Ga. App. 412, 416 (745 SE2d 695) (2013) (holding that plaintiffs could not "satisfy their burden of demonstrating a wilful failure to warn against a dangerous condition on the premises," as needed to fall within the exception to the Recreational Property Act set

7

forth in OCGA § 51-3-25 (a), because, among other things, the allegedly dangerous condition was open and obvious).

As described above, there is evidence that spectators sometimes consumed alcohol at the field in violation of YFA policies, that physical altercations between adults occasionally had occurred at the field, and that on one occasion a spectator was believed to have a gun. But we find no evidence that any unruly behavior by spectators was not open and obvious to an objective person at the field, much less evidence that the league had actual knowledge that the unruly behavior was not apparent to those using the property. Consequently, Trotter has not shown that the Recreational Property Act's exception to immunity for wilful failure to warn or guard applies to this allegedly dangerous condition, and this argument does not present a ground for reversing the grant of summary judgment to the league. See *Gayle*, 322 Ga. App. at 416; *Lee*, 263 Ga. App. at 494 (3).

(b) *Lack of police presence.*

As to police presence, Trotter also failed to produce evidence to create a jury question regarding the third prong of the test.

The record contains evidence that a purpose for police presence would be its deterrent effect, which implies that any such police presence — or lack thereof —

8

would be open and obvious to people at the field. And Trotter offers no argument and points to no evidence showing that the lack of police presence at the field was *not* open and obvious to an objective person. Instead, he points to evidence that he, subjectively, was unaware of the lack of police presence, citing his involvement with his coaching obligations and his reliance on the YFA policy. But we cannot infer that others at the field would have been similarly unaware of the lack of police presence. And we cannot infer that league "had *actual knowledge* that [the lack of police presence was] not apparent — or open and obvious — to [people using the field]." *Stone Mountain Mem. Assn.*, 337 Ga. App. at 473 (emphasis in original). See also *Collins v. City of Summerville*, 284 Ga. App. 54, 57 (1) (643 SE2d 305) (2007). ("[c]ircumstantial evidence may be used to show actual knowledge[, but] in order to preserve the issue for jury determination, . . . the evidence must be such that actual knowledge could be inferred from it"). The evidence to which Trotter points supports, at most, an argument for the league's constructive, rather than actual, knowledge — that under the circumstances the league *should have known* that persons at the field would assume police presence and so be unaware of its absence. This is not enough to invoke OCGA § 51-3-25 (1)'s wilful failure exception. *Stone Mountain Mem. Assn.*, 337 Ga. App. at 470.

9

For these reasons, Trotter has not pointed to evidence creating a genuine issue of material fact about whether the league had the necessary actual knowledge that the lack of police presence was not apparent to persons using the field. So to the extent Trotter claims that the lack of police presence was a dangerous condition separate from the presence of unruly spectators, he has not shown that the Recreational Property Act's exception to immunity for wilful failure to warn or guard applies to this allegedly dangerous condition, and this argument does not present a ground for reversing the grant of summary judgment to the league. See *Gayle*, 322 Ga. App. at 416; *Lee*, 263 Ga. App. at 494 (3).

(c) *Board member's consumption of alcohol.*

As to alcohol consumption by the league's board member who was responsible for overseeing the game, Trotter again cannot show a genuine issue of fact as to one of the prongs of the relevant test, this time because "has presented no evidence that this condition was one involving unreasonable risk of death or serious bodily harm." *Collins*, 284 Ga. App. at 58 (3). There is no evidence of the amount of alcohol consumed by that person or the effect it had on him. The board member had been watching the game from a box in the stands, and he testified that there was "[a]bsolutely no greater chance" that, had he not been drinking, he could have run

10

onto the field or otherwise acted to prevent or end the fight. Trotter does not point to any evidence contradicting this testimony. Instead, his argument on this point is simply equating what he describes as "drunk supervision" with "drunk driving." We find no merit in this argument and conclude that it does not require us to reverse the grant of summary judgment.

*Judgment affirmed. Gobeil and Pinson, JJ., concur.*